**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

THE STATE OF ARIZONA, by and
through its Attorney General, MARK
BRNOVICH; THE STATE OF
LOUISIANA, by and through its
Attorney General, JEFF LANDRY; THE
STATE OF MISSOURI, by and through
its Attorney General, ERIC S.
SCHMITT; THE STATE OF ALABAMA,
by and through its Attorney General,
STEVE MARSHALL; THE STATE OF
ALASKA, by and through its Attorney
General, TREG R. TAYLOR; THE
STATE OF ARKANSAS, by and through
its Attorney General, LESLIE
RUTLEDGE; THE STATE OF
FLORIDA, by and through its Attorney
General, ASHLEY MOODY; THE
STATE OF GEORGIA, by and through
its Attorney General, CHRISTOPHER
M. CARR; THE STATE OF IDAHO, by
and through its Attorney General,
LAWRENCE G. WASDEN; THE STATE
OF KANSAS, by and through its
Attorney General, DEREK SCHMIDT;
THE COMMONWEALTH OF
KENTUCKY, by and through its
Attorney General, DANIEL CAMERON;
THE STATE OF MISSISSIPPI, by and
through its Attorney General, LYNN
FITCH; THE STATE OF MONTANA, by
and through its Attorney General,
AUSTIN KNUDSEN; THE STATE OF
NEBRASKA, by and through its
Attorney General, DOUGLAS J.
PETERSON; THE STATE OF OHIO, by
and through its Attorney General,
DAVE YOST; THE STATE OF
OKLAHOMA, by and through its
Attorney General, JOHN M.
O'CONNOR; THE STATE OF SOUTH

Case No. 6:22-cv-00885-RRS-CBW

CAROLINA, by and through its Attorney General, ALAN WILSON; THE STATE OF TENNESSEE, by and through its Attorney General, HERBERT H. SLATERY III; THE STATE OF UTAH, by and through its Attorney General SEAN D. REYES; THE STATE OF WEST VIRGINIA, by and through its Attorney General, PATRICK MORRISEY; THE STATE OF WYOMING, by and through its Attorney General, BRIDGET HILL,

*Plaintiffs*,

v.

CENTERS FOR DISEASE CONTROL & PREVENTION; ROCHELLE WALENSKY, in her official capacity as Director of the Centers for Disease Control & Prevention; U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; the U.S. DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; U.S CUSTOMS AND BORDER PROTECTION; CHRISTOPHER MAGNUS, in his official capacity Commissioner of U.S. Customs and Border Protection; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TAE JOHNSON, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR M. JADDOU, in her official capacity as Director of U.S. Citizenship and Immigration Services; U.S. BORDER PATROL; RAUL ORTIZ, in his official

capacity as Chief of the U.S. Border
Patrol; U.S. DEPARTMENT OF
JUSTICE; MERRICK GARLAND, in his
official capacity as Attorney General of
the United States of America;
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW; DAVID
NEAL, in his official capacity as Director
of the Executive Office for Immigration
Review; JOSEPH R. BIDEN, J R., in his
official capacity as President of the
United States; and the UNITED
STATES OF AMERICA,

*Defendants*.

---

**BRIEF OF UNITED STATES REPRESENTATIVES JODEY C. ARRINGTON AND MIKE JOHNSON, ET AL. AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

ROBERT HENNEKE
rhenneke@texaspolicy.com
AUTUMN HAMIT PATTERSON
apatterson@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

*Counsel for Amici Curiae*

JOHN STONE CAMPBELL III
johnstone.campbell@taylorporter.com
TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 381-0241
Facsimile: (225) 215-8704

*Local Counsel for Amici Curiae*

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................. v

STATEMENT OF INTEREST OF AMICI CURIAE ................................................... vi

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.     The Termination Decision Will Exacerbate the Current Border Crisis and Harm the Public. ..................................................................... 2

II.    CDC Impermissibly Failed to Consider the Current Border Crisis and the Impact of a Further Migrant Surge and Failed to Adequately Explain Its Policy Reversal. ................................................................... 6

CONCLUSION ................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................... 12

i

# TABLE OF AUTHORITIES

**Cases**

*FCC v. Fox TV Stations, Inc.*,
  556 U.S. 502 (2009) ........................................................................ 7, 10

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) ......................................................................... 7

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989) ............................................................................. 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................... 7, 8

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ......................................................... 4, 9, 10

*Texas v. Biden*,
  No. 4:21-cv-0579, 2022 U.S. Dist. LEXIS 38369 (N.D. Tex. Mar. 4, 2022) ....... 6

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*,
  985 F.3d 472 (5th Cir. 2021) ................................................................. 7

*Wages & White Lion Invs., L.L.C. v. FDA*,
  No. 21-60766, 2021 U.S. App. LEXIS 32112 (5th Cir. Oct. 26, 2021) .............. 7

**Statutes**

5 U.S.C. § 705 ................................................................................ 2, 10

**Regulations**

*Public Health Reassessment and Order Suspending the Right to Introduce
  Certain Persons From Countries Where a Quarantinable
  Communicable Disease Exists*,
  86 Fed. Reg. 42,828, 42,835 (Aug. 5, 2021) ........................................... 7

## Other Authorities

Adam Shaw, *GOP Rep. Gonzales posts images showing migrant releases in Texas due to overcrowded facilities*, FOX NEWS (Mar. 23, 2022), https://www.foxnews.com/politics/gop-rep-gonzales-images-showing-migrant-releases-texas-overcrowded-facilities ................................................... 4

Alex Ruoff, *Permanent Fentanyl Ban Garners Bipartisan Support in Congress*, BLOOMBERG LAW (Mar. 7, 2022), https://tinyurl.com/2p9au4uw ............................................................................ 3

Anna Giaritelli, *Border officials expect Biden to end Trump Title 42 border policy in April*, WASHINGTON EXAMINER (Mar. 23, 2022), https://tinyurl.com/4ymm8sdu ............................................................................ 5

Anna Giaritelli, *More than 400,000 sneaked over southern border and got away in past year, former Border Patrol head says*, WASHINGTON EXAMINER (Oct. 5, 2021), https://tinyurl.com/mt7axjfa .................................... 2

*Criminal Noncitizen Statistics*, U.S. Customs and Border Protection, https://tinyurl.com/3pbwjzmp ............................................................................ 4

DEA Washington Division, Public Information Office, *Fentanyl Deaths Climbing, DEA Washington Continues the Fight*, DEA (Feb. 16, 2022), https://tinyurl.com/49m8ewbt ................................................................ 2

DEA, *Fentanyl Deaths Climbing*; *see also Drug Overdose Deaths in U.S. Top 100,000 Annually,* CDC (Nov. 17, 2021), https://tinyurl.com/y4yfsdy8 ................................................................................................ 3

DHS, Department of the Inspector General, *Rio Grande Valley Area Border Patrol Struggles with High Volumes of Detainees and Cases of Prolonged Detention but Has Taken Consistent Measures to Improve Conditions in Facilities* (Jan. 27, 2022), https://tinyurl.com/yc6y4jma, at 7–9 .................................................... 4

*Drug Seizure Statistics*, U.S. Customs and Border Protection, https://www.cbp.gov/newsroom/stats/drug-seizure-statistics ........................... 3

*Facts about Fentanyl*, DEA, https://tinyurl.com/2s3nysj6 ........................................... 3

Jonathan Swan & Stef W. Kight, *Scoop: Biden officials fear "mass migration event" if COVID policies end*, AXIOS (Mar. 17, 2022), https://tinyurl.com/2p977acr ............................................................................. 5

iii

Joseph R. Biden, Jr., Letter to the Speaker of the House and the President of the Senate on Imposing Sanctions on Foreign Persons Involved in the Global Illicit Drug Trade, the White House (Dec. 15, 2021), https://tinyurl.com/2ddyw9sp ............................................................................... 3

*Lankford Warns 1 Million Illegal Immigrants Could Cross the Southern Border in 6 Weeks If Biden Rescinds Title 42* (Mar. 23, 2022), https://tinyurl.com/mu6wpa4d ........................................................................ 5

Muzaffar Chishti & Jessica Bolter, *Border Challenges Dominate, But Biden's First 100 Days Mark Notable Under-the-Radar Immigration Accomplishments*, MIGRATION POLICY INSTITUTE (Apr. 26, 2021), https://tinyurl.com/2p938a7d ............................................................................ 4

Priscilla Alvarez, *US on track to encounter record 2 million migrants on the southern border, government estimates show*, CNN (Mar. 31, 2021), https://tinyurl.com/2p8jmzy9 ........................................................................... 2

Senate Republican Conference, *Biden's Border Crisis is the Worst in American History: His Policies Continue to Make it Worse*, https://tinyurl.com/caydcupd ............................................................................. 4

Southwest Land Border Encounters, U.S. Customs and Border Protection, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters. .......................................................................................................... 2

IDENTITY OF PARTIES AND COUNSEL

The parties and their counsel are correctly identified in the Stipulation Regarding Schedule for Resolution of Plaintiffs' Motion for a Preliminary Injunction. *Amici curiae* United States Representatives Jodey C. Arrington, Brian Babin, D.D.S., Jim Banks, Andy Biggs, Dan Bishop, Vern Buchanan, Ted Budd, Michael C. Burgess, M.D., Kat Cammack, Ben Cline, Michael Cloud, Rodney Davis, Jeff Duncan, Andrew R. Garbarino, Louie Gohmert, Bob Good, Lance Gooden, Marjorie Taylor Greene, Michael Guest, Vicky Hartzler, Yvette Herrell, Clay Higgins, Ashley Hinson, Ronny L. Jackson, Mike Johnson, Mike Kelly, David Kustoff, Doug Lamborn, Debbie Lesko, Nancy Mace, Lisa McClain, Tom McClintock, Dan Meuser, Mary E. Miller, Markwayne Mullin, Greg Murphy, M.D., Ralph Norman, Dan Newhouse, Steven M. Palazzo, Scott Perry, August Pfluger, David Rouzer, Austin Scott, Adrian Smith, Jason Smith, Lloyd Smucker, Victoria Spartz, Elise M. Stefanik, Tom Tiffany, William Timmons, Beth Van Duyne, Randy K. Weber, Roger Williams, and Lee M. Zeldin are represented by the following counsel:

Robert Henneke
rhenneke@texaspolicy.com
Autumn Hamit Patterson
apatterson@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:  (512) 472-2700
Facsimile:   (512) 472-2728

John Stone Campbell III
johnstone.campbell@taylorporter.com
TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 381-0241
Facsimile: (225) 215-8704

v

## STATEMENT OF INTEREST OF AMICI CURIAE[1]

*Amici* are 54 United States Representatives:

- Representative Jodey C. Arrington represents the 19th Congressional District of Texas.

- Representative Brian Babin, D.D.S. represents the 36th Congressional District of Texas.

- Representative Jim Banks represents the 3rd Congressional District of Indiana.

- Representative Andy Biggs represents the 5th Congressional District of Arizona.

- Representative Dan Bishop represents the 9th Congressional District of North Carolina.

- Representative Vern Buchanan represents the 16th Congressional District of Florida.

- Representative Ted Budd represents the 13th Congressional District of North Carolina.

- Representative Michael C. Burgess, M.D. represents the 26th Congressional District of Texas.

---

[1]     No party's counsel authored this brief in whole or part.  No party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person other than *amici curiae* and their counsel contributed money that was intended to fund preparing or submitting this brief.  All parties have consented to the filing of this brief.

- Representative Kat Cammack represents the 3rd Congressional District of Florida.

- Representative Ben Cline represents the 6th Congressional District of Virginia.

- Representative Michael Cloud represents the 27th Congressional District of Texas.

- Representative Rodney Davis represents the 13th Congressional District of Illinois.

- Representative Jeff Duncan represents the 3rd Congressional District of South Carolina.

- Representative Andrew R. Garbarino represents the 2nd Congressional District of New York.

- Representative Louie Gohmert represents the 1st Congressional District of Texas.

- Representative Bob Good represents the 5th Congressional District of Virginia.

- Representative Lance Gooden represents the 5th Congressional District of Texas.

- Representative Marjorie Taylor Greene represents the 14th Congressional District of Georgia.

- Representative Michael Guest represents the 3rd Congressional District of Mississippi.

- Representative Vicky Hartzler represents the 4th Congressional District of Missouri.

- Representative Yvette Herrell represents the 2nd Congressional District of New Mexico.

- Representative Clay Higgins represents the 3rd Congressional District of Louisiana.

- Representative Ashley Hinson represents the 1st Congressional District of Iowa.

- Representative Ronny L. Jackson represents the 13th Congressional District of Texas.

- Representative Mike Johnson represents the 4th Congressional District of Louisiana.

- Representative Mike Kelly represents the 16th Congressional District of Pennsylvania.

- Representative David Kustoff represents the 8th Congressional District of Tennessee.

- Representative Doug Lamborn represents the 5th Congressional District of Colorado.

- Representative Debbie Lesko represents the 8th Congressional District of Arizona.

- Representative Nancy Mace represents the 1st Congressional District of South Carolina.

- Representative Lisa McClain represents the 10th Congressional District of Michigan.

- Representative Tom McClintock represents the 4th Congressional District of California.

- Representative Dan Meuser represents the 9th Congressional District of Pennsylvania.

- Representative Mary E. Miller represents the 15th Congressional District of Illinois.

- Representative Markwayne Mullin represents the 2nd Congressional District of Oklahoma.

- Representative Greg Murphy, M.D. represents the 3rd Congressional District of North Carolina.

- Representative Dan Newhouse represents the 4th Congressional District of Washington.

- Representative Ralph Norman represents the 5th Congressional District of South Carolina.

- Representative Steven M. Palazzo represents the 4th Congressional District of Mississippi.

- Representative Scott Perry represents the 10th Congressional District of Pennsylvania.

- Representative August Pfluger represents the 11th Congressional District of Texas.

- Representative David Rouzer represents the 7th Congressional District of North Carolina.

- Representative Austin Scott represents the 8th Congressional District of Georgia.

- Representative Adrian Smith represents the 3rd Congressional District of Nebraska.

- Representative Jason Smith represents the 8th Congressional District of Missouri.

- Representative Lloyd Smucker represents the 11th Congressional District of Pennsylvania.

- Representative Victoria Spartz represents the 5th Congressional District of Indiana.

- Representative Elise M. Stefanik represents the 21st Congressional District of New York.

- Representative Tom Tiffany represents the 7th Congressional District of Wisconsin.

- Representative William Timmons represents the 4th Congressional District of South Carolina.

- Representative Beth Van Duyne represents the 24th Congressional District of Texas.

- Representative Randy K. Weber represents the 14th Congressional District of Texas.

x

- Representative Roger Williams represents the 25th Congressional District of Texas.

- Representative Lee M. Zeldin represents the 1st Congressional District of New York.

Each of these representatives has serious concerns that the recent decision of the Centers for Disease Control and Prevention ("CDC") to terminate its prior Title 42 policies ("Termination Decision") is inconsistent with other CDC actions and policies which continue to detrimentally impact U.S. citizens and their districts. For example, U.S. citizens are required to show a negative COVID-19 test (or adequate proof of recovery) before even being permitted to board a flight back into the United States, but illegal aliens with COVID-19 can no longer be expelled under Title 42. This inequitable treatment of U.S. citizens has no justification. Moreover, the representatives have heard constituents and local officials express grave concerns that the Termination Decision will exacerbate the current border crisis, be inconsistent with existing COVID-19 restrictions, and deplete federal and local resources.

The Termination Decision is a dangerous—and unlawful—policy reversal that inequitably favors noncitizens over U.S. citizens and threatens national security. Consistent with their interests in protecting their constituents and ensuring the border is secure, *amici* have a compelling interest in supporting Plaintiffs' motion for a preliminary injunction and emphasizing the severity of the current border crisis and how the Termination Decision will exacerbate that crisis.

**INTRODUCTION**

Although CDC and other federal agencies argue that a whole host of COVID-19 restrictions on U.S. citizens are essential to combat the ongoing COVID-19 pandemic, CDC changes its tune about the necessity of COVID-19 restrictions when it comes to illegal aliens on the southern border.  This inconsistency is unjustifiable not only as a matter of policy, but also as a matter of law.

The United States faces a crisis at its southern border with skyrocketing rates of illegal border crossings.  Federal agencies and local communities are overwhelmed, and Customs and Border Protection ("CBP") often claims it has no choice but to release illegal aliens into local communities due to overcrowded detention facilities. Yet CDC ignored the current border crisis and its own COVID-19 policies when it decided to terminate the Title 42 policies that enabled CBP to expel illegal aliens from the United States based on CDC's belief that expulsions reduced the danger of increased COVID-19 transmission.  What is more, CDC acknowledged the Termination Decision would create a migrant surge, but it failed to explain how that surge would affect its COVID-19 mitigation policies (much less how terminating Title 42 would be consistent with CDC's other restrictive COVID-19 policies that continue to detrimentally impact U.S. citizens).

CDC's failure to address the current border crisis at all or to adequately explain how a migrant surge caused by the Termination Decision will impact CDC's COVID-19 strategies—along with the reasons detailed in Plaintiffs' motion for a preliminary injunction—demonstrates that the Termination Decision is not a product

of reasoned decisionmaking.  Furthermore, the Termination Decision's calamitous impact on the border crisis underscores how granting a preliminary injunction or postponing the effective date of the Termination Decision under 5 U.S.C. § 705 will serve the public interest.

**ARGUMENT**

## I.     The Termination Decision Will Exacerbate the Current Border Crisis and Harm the Public.

Currently, there is a crisis at the southern border of the United States with unprecedented numbers of illegal border crossings.  In fiscal year 2021, there were more than 1.7 million apprehensions and encounters at the southern border.[2]  This fiscal year, CBP is on track to have more than 2 million apprehensions and encounters.[3]  These figures, of course, do not take into account the illegal aliens who successfully evaded apprehension and have not turned themselves in.[4]  The border crisis has exacted an enormous toll on federal and state resources, not to mention the detrimental impact on local communities and vulnerable migrants being exploited by cartels.

Moreover, the border crisis is fueling other criminal activity with disastrous

---

[2]     Southwest Land Border Encounters, U.S. Customs and Border Protection, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters.

[3]     Priscilla Alvarez, *US on track to encounter record 2 million migrants on the southern border, government estimates show*, CNN (Mar. 31, 2021), https://tinyurl.com/2p8jmzy9.

[4]     Although that number is impossible to calculate precisely, at least 400,000 aliens evaded apprehension in fiscal year 2021 alone.  *See* Anna Giaritelli, *More than 400,000 sneaked over southern border and got away in past year, former Border Patrol head says*, WASHINGTON EXAMINER (Oct. 5, 2021), https://tinyurl.com/mt7axjfa.

consequences for public health and safety.  Fentanyl is being smuggled from Mexico and causing an alarming increase in drug-overdose deaths.[5]  Indeed, the Drug Enforcement Administration recently reported a sad new record: the United States topped 100,000 drug-overdose deaths in a 12-month period.[6]  And overdose deaths can only be expected to increase as border agents are seeing increasing amounts of fentanyl.  In fiscal year 2021, CBP seized over ten thousand pounds of fentanyl at the southern border compared to less than five thousand pounds in fiscal year 2020 and less than three thousand pounds in fiscal year 2019.[7]  Furthermore, this drug smuggling fuels additional criminal activity in the United States.  President Biden has acknowledged as much, explaining that trafficking of fentanyl and other illicit

---

[5]    *See* DEA Washington Division, Public Information Office, *Fentanyl Deaths Climbing, DEA Washington Continues the Fight*, DEA (Feb. 16, 2022), https://tinyurl.com/49m8ewbt ("DEA, *Fentanyl Deaths Climbing*") ("As the new year rolls in, Drug Enforcement Administration Divisions across the U.S. are seeing overdose deaths climb at an alarming rate, especially those caused by the synthetic opioid, fentanyl."); *Facts about Fentanyl*, DEA, https://tinyurl.com/2s3nysj6 ("Illicit fentanyl, primarily manufactured in foreign clandestine labs and smuggled into the United States through Mexico, is being distributed across the country and sold on the illegal drug market.").

[6]    DEA, *Fentanyl Deaths Climbing*; *see also Drug Overdose Deaths in U.S. Top 100,000 Annually,* CDC (Nov. 17, 2021), https://tinyurl.com/y4yfsdy8 ("Provisional data from CDC's National Center for Health Statistics indicate that there were an estimated 100,306 drug overdose deaths in the United States during 12-month period ending in April 2021, an increase of 28.5% from the 78,056 deaths during the same period the year before."); Alex Ruoff, *Permanent Fentanyl Ban Garners Bipartisan Support in Congress*, BLOOMBERG LAW (Mar. 7, 2022), https://tinyurl.com/2p9au4uw ("Ruoff, *Permanent Fentanyl Ban*") ("An estimated 104,288 people died in the U.S. of drug overdoses in the year up to September 2021, the highest ever recorded, Centers for Disease Control and Prevention data show.").

[7]    *Drug Seizure Statistics*, U.S. Customs and Border Protection, https://www.cbp.gov/newsroom/stats/drug-seizure-statistics; *see also* Ruoff, *Permanent Fentanyl Ban* ("U.S. Customs and Border Protection say in 2021 they seized a record amount of fentanyl coming into the U.S.").

3

drugs into the United States causes "violence that harms our communities" and "constitutes an unusual and extraordinary threat" to our national security.[8]  The increasing number of illegal aliens with prior criminal convictions for violent crimes and sex offenses likewise threatens public health and safety.[9]

The flurry of recent changes in immigration policies have caused the current border crisis.[10]  In President Biden's first 100 days in office, he took more than 94 actions on immigration, many of which were designed to unravel previous immigration policies.[11]  Those actions, along with even more recent policy changes, have proven to be an unmitigated disaster with CBP and local entities incapable of dealing with the increased volume of illegal entries.[12]  Indeed, just last month, CBP

[8]    Joseph R. Biden, Jr., Letter to the Speaker of the House and the President of the Senate on Imposing Sanctions on Foreign Persons Involved in the Global Illicit Drug Trade, the White House (Dec. 15, 2021), https://tinyurl.com/2ddyw9sp.

[9]    *See Criminal Noncitizen Statistics*, U.S. Customs and Border Protection, https://tinyurl.com/3pbwjzmp (recording numbers of apprehended aliens who have a previous conviction for serious crimes).

[10]    Senate Republican Conference, *Biden's Border Crisis is the Worst in American History: His Policies Continue to Make it Worse*, https://tinyurl.com/caydcupd.

[11]    *See* Muzaffar Chishti & Jessica Bolter, *Border Challenges Dominate, But Biden's First 100 Days Mark Notable Under-the-Radar Immigration Accomplishments*, Migration Policy Institute (Apr. 26, 2021), https://tinyurl.com/2p938a7d (explaining how President Biden narrowed immigration enforcement and worked to undo the previous administration's immigration policies).

[12]    *See, e.g.*, *Texas v. Biden*, 20 F.4th 928, 966 (5th Cir. 2021) (concluding the district court's finding that Department of Homeland Security ("DHS") had "inadequate detention capacity" was "firmly" rooted in the evidence and noting that, "on appeal, even the Government admits DHS is 'detaining at or near its capacity limits'"); DHS, Department of the Inspector General, *Rio Grande Valley Area Border Patrol Struggles with High Volumes of Detainees and Cases of Prolonged Detention but Has Taken Consistent Measures to Improve Conditions in Facilities* (Jan. 27, 2022), https://tinyurl.com/yc6y4jma, at 7–9 (explaining that, due to "the high volume of apprehensions" in July 2021, holding rooms were overcrowded, medical screening

was forced to release illegal aliens into Texas cities because detention facilities were overcrowded.[13]   Nevertheless, CDC decided to push through with its decision to terminate the Title 42 policies that have proven essential in the midst of the pandemic and border crisis.[14]

It is beyond dispute that terminating the previous Title 42 policies will cause an overwhelming migrant surge and intensify the border crisis.  Even CDC admits the obvious: the Termination Decision "will lead to an increase in the number of noncitizens being processed in DHS facilities." Termination Decision at 28.  And DHS has reported that tens of thousands of migrants are already in shelters just south of the U.S. border and preparing to enter upon the Termination Decision's effective date.[15]  Moreover, the DHS Office of Intelligence and Analysis anticipates that one

---

was not consistent, and that "some detainees with COVID-19 symptoms were entering facilities"); *id.* at 16 ("[C]rowded cells increased the risk of COVID-19 transmission as shown in [pictures below]. At the onset of the COVID-19 pandemic, Border Patrol established cell capacity limits at about one-third of normal capacity, but with the high volume of apprehensions most cells held more than their pre-COVID-19 capacity."); Members of the Texas Congressional Delegation's Letter to DHS and HHS (Mar. 29, 2022), at 3–4, https://tinyurl.com/sjxspa2h ("South Texas mayors inform us that the local non-governmental organizations are completely at capacity in terms of lodging and other services . . . .").

[13]     Adam Shaw, *GOP Rep. Gonzales posts images showing migrant releases in Texas due to overcrowded facilities*, Fox News (Mar. 23, 2022), https://www.foxnews.com/politics/gop-rep-gonzales-images-showing-migrant-releases-texas-overcrowded-facilities.

[14]     *See id.* ("Title 42 was used to expel about half of the migrants encountered in February.").

[15]     *See* Jonathan Swan & Stef W. Kight, *Scoop: Biden officials fear "mass migration event" if COVID policies end*, Axios (Mar. 17, 2022), https://tinyurl.com/2p977acr ("Department of Homeland Security intelligence estimates that perhaps 25,000 migrants already are waiting in Mexican shelters just south of the border for Title 42 to end."); *see also Lankford Warns 1 Million Illegal Immigrants Could Cross the Southern Border in 6 Weeks If Biden Rescinds Title 42*

million migrants could cross the southern border within the first six weeks of the Termination Decision's effective date.[16]  CBP cannot handle the current level of illegal border entries and will certainly be incapable of dealing with a further surge.  A senior Border Patrol official has warned that, within just "a few days" of the termination of Title 42 policies, CBP will reach capacity and "will be forced to release subjects on the street," which will lead to continued surges of migrants.[17]

Accordingly, the Termination Decision will have a catastrophic impact on the border crisis, causing serious public health and safety harms.  Because the public has a significant interest in the rule of law, "in stemming the flow of illegal immigration," and in maintaining public safety, "the public interest favors an injunction." *See Texas v. Biden*, No. 4:21-cv-0579, 2022 U.S. Dist. LEXIS 38369, at *54–55 (N.D. Tex. Mar. 4, 2022).

## II.   CDC Impermissibly Failed to Consider the Current Border Crisis and the Impact of a Further Migrant Surge and Failed to Adequately Explain Its Policy Reversal.

When deciding to terminate previous Title 42 policies, CDC failed to consider relevant factors and failed to reasonably explain its decision in myriad ways.

---

(Mar. 23, 2022), https://tinyurl.com/mu6wpa4d ("Lankford Statement") ("[I]n a briefing with my staff last week, DHS Office of Intelligence and Analysis told our team that as soon as they release Title 42, they anticipate tens of thousands of migrants crossing the border within hours, that they're literally camped up on the south side of the border and that they will flood the border.").

[16]   *See* Lankford Statement ("DHS Office of Intelligence anticipates hundreds of thousands of migrants crossing within two weeks and as many as a million crossing within six weeks of when they lift Title 42 authority.").

[17]   Anna Giaritelli, *Border officials expect Biden to end Trump Title 42 border policy in April*, WASHINGTON EXAMINER (Mar. 23, 2022), https://tinyurl.com/4ymm8sdu.

Focusing on only two, CDC did not consider the current border crisis and did not explain how a further migrant surge would impact its COVID-19 mitigation strategies, including COVID-19 measures it continues to impose on U.S. citizens.  The latter is particularly egregious because CDC ignored its prior findings about overcrowding risks.  The Termination Decision therefore must be set aside.

Under the APA's arbitrary-and-capricious standard, an agency action must "be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).  This requires an agency to "account for 'relevant factors'" and prohibits an agency from "'entirely fail[ing] to consider an important aspect of the problem' that it seeks to address." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989), and *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).  Furthermore, when a "new policy rests upon factual findings that contradict those which underlay [an agency's] prior policy," a "more detailed justification" is required.  *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009); *accord Wages & White Lion Invs., L.L.C. v. FDA*, No. 21-60766, 2021 U.S. App. LEXIS 32112, at *14 (5th Cir. Oct. 26, 2021).

CDC failed on all counts here.  First, CDC entirely failed to address an important factor—the current border crisis—even though DHS and CBP are already overwhelmed by the current influx of aliens and are experiencing overcrowding at their facilities.[18]  The Termination Decision does not discuss the current border crisis

---

[18]      *See supra* notes 12–13.

7

and does not consider whether it is in the interest of public health to extend the Title 42 policies until the current migrant surge subsides.  This silence is particularly striking since CDC previously considered the border crisis when deciding to extend Title 42 policies.  *See* CDC, *Public Health Reassessment and Order Suspending the Right to Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease* Exists, 86 Fed. Reg. 42,828, 42,835 (Aug. 5, 2021) ("Aug. 5, 2021 Order") ("[D]uring migratory surges, capacity constraints hinder CBP and ICE operations and facilities alike. . . . Of note, the United States is currently experiencing such a migratory surge of noncitizens attempting to enter the country . . . .").  CDC can hardly pretend the border crisis is not "an important aspect of the problem" that it was required to consider in making a decision about Title 42 policies when the border crisis was a factor that CDC considered in its earlier decision.  *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Second, CDC failed to adequately consider how its Termination Decision would cause a massive migrant surge and impact its COVID-19 mitigation measures, including the measures CDC continues to impose on U.S. citizens.  All CDC said on the topic was that the Termination Decision would increase illegal border entries, "which could result in overcrowding," that "seasonal migration patterns" may cause even "further crowding in DHS facilities," and that DHS "is taking steps to plan for such increases."  Termination Decision at 28.  The Termination Decision omitted the expected size of the surge—one million aliens in six weeks—and included no details, based on CDC's reasoning, about how DHS could effectively implement COVID-19

mitigation measures, such as testing, quarantine, isolation, or vaccination, when faced with so many illegal aliens.[19] Just like it is insufficient for an agency to state that a factor was considered as opposed to actually considering that factor, *Texas*, 20 F.4th at 993, it is insufficient for an agency to state that it "is taking steps to plan" for a circumstance as opposed to actually having and explaining the plan, *see* Termination Decision at 28.

CDC's failure to articulate a plan to prevent overcrowding is especially inexcusable. That is because CDC previously concluded that overcrowding creates "a high risk of COVID-19 transmission among those held in the facilities and the CBP workforce, ultimately burdening the local healthcare system." Aug. 5, 2021 Order at 42,837; *see id.* at 42,835–36 (explaining how a previous surge "caused CBP to exceed COVID-constrained capacity and routinely exceed its non-COVID capacity," which resulted in "increased time spent in custody" and "present[ed] a serious risk of increased COVID-19 transmission in CBP facilities"); *id.* at 42,837 ("Amid the ongoing migrant surge, both the COVID-19-reduced capacity and higher non-COVID holding capacity limits have been exceeded in CBP facilities. Complete termination of any order under 42 U.S.C. 265 would increase the number of noncitizens requiring processing under Title 8, resulting in severe overcrowding and a high risk of COVID-

---

[19]     In fact, even disregarding the expected surge, CDC conceded that DHS may not be able to completely implement its vaccination program by the Termination Decision's effective date.  *See id.* at 22 n.145.  Moreover, CDC did not explain the inconsistency of requiring U.S. citizens to prove they do not have COVID-19 before allowing them to fly back into the United States while not enforcing a similar testing requirement on illegal aliens flooding the southern border.

19 transmission among those held in the facilities and the CBP workforce, ultimately burdening the local healthcare system."). CDC may now wish to downplay these previous findings by claiming that overcrowding is no longer a serious risk of increased COVID-19 transmission due to vaccinations or immunity. But CDC cannot dodge its earlier findings through post-hoc rationalizations. If CDC's decision was predicated on contradicting its earlier findings about overcrowding, then it needed to provide a "detailed justification" in its decision. *See Texas*, 20 F.4th at 991 (quoting *Fox*, 556 U.S. at 515). It failed to do so. CDC's failure to discuss these "prior factual findings—much less explain why they were wrong" or no longer applicable—is thus "another basis for [the] conclusion that the Termination Decision was arbitrary and capricious." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction or postpone the effective date of the Termination Decision under 5 U.S.C. § 705.

Respectfully submitted,

**TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.**

By:*/s/ John Stone Campbell III*
JOHN STONE CAMPBELL III, La. Bar No. 23674
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 381-0241
Facsimile: (225) 215-8704
Email: johnstone.campbell@taylorporter.com

*Local Counsel for Amici Curiae*


*/s/ Autumn Hamit Patterson*
ROBERT HENNEKE*
rhenneke@texaspolicy.com
AUTUMN HAMIT PATTERSON*
apatterson@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728
**pro hac vice* applications forthcoming

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2022, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system and will be served on counsel for all parties by operation of the Court's electronic filing system.

*/s/John Stone Campbell III*
JOHN STONE CAMPBELL III

12