IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF ARIZONA, By and through its Attorney General, Mark Brnovich, et al., <br><br> PLAINTIFFS, <br><br> v. <br><br> CENTERS FOR DISEASE CONTROL & PREVENTION; et al., <br><br> DEFENDANTS. | CIVIL ACTION NO. 6:22-cv-00885-RRS-CBW |

**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO COMPEL PRODUCTION OF INFORMATION**

**MOTION**

This is a suit challenging Defendants' revocation of Title 42 ("Termination Order"), which Defendant CDC publicly stated was being delayed until May 23 "to enable DHS to … prepare for full resumption of regular migration under Title 8 authorities." Termination Order (Dkt 1-1) at 5. Plaintiff States have sought a preliminary injunction to prevent that Termination Order from going into effect, and have agreed with Federal Defendants on a briefing schedule that would permit adjudication of that motion before May 23.

It appears, however, that the Defendant Department of Homeland Security ("DHS") and its Defendant subagencies are partially implementing the Termination Order *already*. Yesterday, a major media outlet reported that "Border Patrol is not using the Title 42 public health order to remove many migrants from the Northern Triangle countries of Guatemala, Honduras and El Salvador, more than a month before the Biden administration lifts the order altogether," according to "multiple Border Patrol sources."[1] DHS seems to admit it partially ended Title 42, on the basis that return flights to "certain non-contiguous countries" take too long to schedule.[2] But DHS previously returned aliens to Mexico when flights were limited, and such action is the only one that aligns with public health harms detailed in the Title 42 Order, which is still in place. Thus, while Title 42 may be "technically still in place," the reality on the ground is that DHS "has largely stopped using Title 42 to remove migrants from Northern Triangle countries, and is instead processing them via Title 8 and expedited removal."[3]

In response to that report, counsel for the State of Louisiana confirmed with the President of the Border Patrol Union that DHS has, in fact, shifted to processing large numbers of migrants via Title 8, is frequently releasing those migrants into the United States, and is diverting agents from field

---

[1] Bill Melugin, Fox News, *Border Patrol not using Title 42 to expel some Northern Triangle migrants ahead of its May 23 end: sources* (Apr. 20, 2022), https://fxn.ws/3K4YMxs.
[2] *Id.*
[3] *Id.*

duties to provide security while those migrants are processed under Title 8. St. John Decl. ¶¶ 5-7. Indeed, it appears that CDC's forecast of operational problems was correct, and agents are being pulled from the field as a consequence of DHS's actions. *Id.* This increases the number of aliens who arrive into the Plaintiff States undetected and thus not processed under either Title 8 or Title 42, or screened for any communicable disease.

In an April 21, 2022, telephone conference, counsel for Defendants confirmed that DHS was shifting to Title 8 in advance of the announced May 23 termination date. St. John Decl. ¶ 9. This premature implementation of the Title 42 Termination Order unfortunately means that the irreparable harms that the States sought to avoid through their preliminary injunction motion may already be occurring *now*. Given that the enormous potential harms identified in the States' preliminary injunction motion are likely already occurring, the States respectfully request that this Court enter a temporary restraining order ("TRO") against any implementation of the Termination Order before its May 23 effective date, and require Defendants to continue processing migrants pursuant to Title 42 rather than Title 8. Such an order should extend to all actions that either formally effectuate the Termination Order or have substantially similar effect under some other legal styling.

Such a TRO is appropriate for all of the reasons that are set forth in the States' preliminary injunction motion. *See* Doc. 13-1. "The standard for deciding whether to issue a preliminary injunction is the same standard used to issue a temporary restraining order." *Texas v. United States*, 524 F. Supp. 3d 598, 651 (S.D. Tex. 2021) (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (granting TRO against illegal DHS actions). And each of the preliminary injunction requirements are satisfied here for the reasons that the States have previously explained. *See* Doc. 13-1. Nor would Defendants suffer any cognizable prejudice: Defendants intentionally chose to delay the effective date of their Order until May 23, and cannot suffer prejudice from a TRO preventing its implementation before then. DHS also will not suffer prejudice because it is statutorily precluded from deviating from the Title 42

3

Orders while they are in effect, and hence lacks any authority/discretion to partially implement the Termination Order in advance of May 23. Specifically, Congress has commanded that "[i]t *shall be the duty* of the customs officers and of Coast Guard officers *to aid in the enforcement of quarantine rules and regulations*," such as the Title 42 Orders. 42 U.S.C. § 268 (emphasis added). DHS cannot lawfully discharge its "duty … to aid" enforcement of Title 42 by partially repealing it under its own putative authority. And to the extent that DHS believes that gradual implementation of the Termination Order is appropriate, such incremental steps could only begin on May 23 if the Order is still legally operative/non-enjoined at that time.

In addition, Federal Defendants' monopoly on information about what actions they are taking frustrates both the States' ability to seek relief against the irreparable harms they will otherwise incur and this Court's authority to grant relief if it concludes that that the Termination Order is unlawful. Once the Order is put into effect—even partially—few if any of the resulting harms can ever be remedied by this Court. That is particularly true as money damages are not available and it is doubtful that this Court could effectively rescind unlawful grants of asylum or parole into the U.S. Indeed, the irrevocable nature of the harms that the Title 42 Termination will cause is precisely why the *bipartisan* calls for abandonment or dela of the Order have been so resounding. *See* Doc. 13-1 at 1-2.

To remedy this information deficit and address potential improper conduct by Defendants, this Court should order DHS to report on its activities on an expedited basis so that the States can consider whether additional relief is appropriate to seek. To that end, the States request that this Court enter an order requiring DHS to submit a declaration under oath by Sunday, April 24, at 5pm CST, explaining what actions (if any) they have taken to implement the Title 42 Termination, either formally or that *de facto* have similar effect. That declaration should, at a minimum:

1) Identify and describe what actions, if any, it has taken to implement the Termination Order as a formal matter;

2) Identify and describe what actions, if any, it has taken within the last month that would have substantially similar effect, including without limitation, any shift to processing aliens under Title 8;

3) Identify and describe in detail any changes in policy with respect to immigrants from Northern Triangle Countries in the past month and produce all guidance documents, orders, etc., relating to the same, including any provided to DHS employees of any rank;

4) Provide statistics for the number of migrants processed under Title 42 and Title 8 by country for each week over the past six months so that any meaningful changes in policy can be detected;

5) Either (a) attest under oath that the agency has not taken *any* actions in the prior month that could be reasonably characterized as a partially implementing the Termination Order, no matter how styled or characterized or (b) explain and describe in detail *any and all* actions that a reasonable observer might characterize as having the same effect as early implementation of the Termination Order *regardless of whether DHS itself believes those actions have that effect*, specifically including any shift to processing under Title 8;

6) Explain in detail whether a TRO that precluded DHS from taking any actions that (a) formally implement the Title 42 Termination before May 23 or (b) have substantially similar effect no matter how styled, would require DHS to make any changes to its current policies or policies that are set to go into effect before May 23, 2022; and

7) To the extent that DHS might assert that recent policy changes are independent from the Termination Order, (a) attest under oath that the impending termination of Title 42 played no role whatsoever in DHS's decisions to implement the changes or (b) admit that the upcoming May 23 termination date played a role in the decisions and explain how in detail.

After DHS files that declaration, this Court may wish to set a status conference to discuss what further actions, if any, are appropriate.

Perhaps all of the reporting and Mr. Judd's statements are inaccurate and DHS has made no significant changes to its Title 42 implementation recently. That seems doubtful, but if so Defendants will not suffer any genuine prejudice from a TRO that precludes them from taking actions that they are not in fact taking. But if the enormous irreparable harms that the States sought to forestall by their motion for a preliminary injunction are already occurring *now*, the States should not be made to suffer.

For these reasons, this Court should issue a TRO immediately and require DHS to explain its actions so that the States and this Court can take appropriate actions in response to what may (or may not) be some highly inappropriate actions by DHS that directly undermine this Court's authority to remedy the harms that the challenged agency action would occasion.

## CONCLUSION

For the foregoing reasons, this Court should issue a TRO and require DHS to explain any recent changes in policy regarding Title 42 as set forth above.

## LOCAL RULE 65.1 CERTIFICATE

On April 20, 2022, counsel for the State of Arizona corresponded with counsel for Defendants and informed them (1) of the substance of this motion and (2) that Plaintiff States intended to file this motion at 09:00 a.m. on April 21, 2022. At the request of counsel for Defendants, Plaintiff States refrained from filing this motion until after the parties conferred telephonically on April 21, 2022. During that telephone conference, counsel for Defendants stated that they would respond to this motion. A true and accurate copy of the correspondence between counsel is attached as Exhibit C to the supporting St. John Declaration. Copies of this motion and all supporting documents will be served upon counsel for Defendants via ECF.

Dated: April 21, 2022                                      Respectfully submitted,

By: */s/ Joseph S. St. John*

| | |
|---|---|
| MARK BRNOVICH<br>  Attorney General<br>BRUNN ("BEAU") W. ROYSDEN III*<br>  Solicitor General<br>DREW C. ENSIGN*<br>  Deputy Solicitor General<br>JAMES K. ROGERS*<br>  Senior Litigation Counsel<br>ANTHONY R. NAPOLITANO<br>  Assistant Attorney General<br>OFFICE OF THE ARIZONA ATTORNEY GENERAL<br>2005 North Central Avenue<br>Phoenix, AZ 85004<br>beau.roysden@azag.gov<br>drew.ensign@azag.gov<br>james.rogers@azag.gov<br><br>*Counsel for Plaintiff State of Arizona*<br><br>STEVE MARSHALL<br>  Alabama Attorney General<br>EDMUND G. LACOUR JR.*<br>  Solicitor General<br>Office of the Attorney General<br>State of Alabama<br>501 Washington Avenue<br>P.O. Box 300152<br>Montgomery, Alabama 36130-0152<br>Telephone: (334) 242-7300<br>Edmund.LaCour@AlabamaAG.gov<br><br>*Counsel for Plaintiff State of Alabama* | ELIZABETH B. MURRILL (La #20685)<br>  Solicitor General<br>J. SCOTT ST. JOHN (La #36682)<br>  Deputy Solicitor General<br>LOUISIANA DEPARTMENT OF JUSTICE<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>stjohnj@ag.louisiana.gov<br><br>*Counsel for Plaintiff State of Louisiana*<br><br>ERIC S. SCHMITT<br>  Attorney General<br>D. JOHN SAUER<br>  Solicitor General<br>OFFICE OF THE MISSOURI ATTORNEY GENERAL<br>Supreme Court Building<br>P.O. Box 899<br>Jefferson City, MO 65102<br>Phone: (573) 751-3321<br>John.Sauer@ago.mo.gov<br><br>*Counsel for Plaintiff State of Missouri*<br><br>TREG R. TAYLOR<br>  Attorney General of Alaska<br>CORI M. MILLS*<br>  Deputy Attorney General of Alaska<br>CHRISTOPHER A. ROBISON*<br>  Assistant Attorney General<br>Alaska Department of Law<br>1031 West 4th Avenue, Suite 200<br>Anchorage, AK 99501-1994<br>chris.robison@alaska.gov<br><br>*Counsel for Plaintiff State of Alaska* |

LESLIE RUTLEDGE
   Arkansas Attorney General
NICHOLAS J. BRONNI*
   Solicitor General
DYLAN L. JACOBS*
   Deputy Solicitor General
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*


CHRISTOPHER M. CARR
   Attorney General of Georgia
STEPHEN J. PETRANY*
   Solicitor General
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

DEREK SCHMIDT
   Attorney General
DWIGHT R. CARSWELL*
   Deputy Solicitor General
Office of the Kansas Attorney General
120 SW 10th Ave., 3rd Floor
Topeka, KS 66612-1597
dwight.carswell@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

ASHLEY MOODY
   Attorney General
JAMES H. PERCIVAL*
   Deputy Attorney General of Legal Policy
OFFICE OF THE FLORIDA
ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

LAWRENCE G. WASDEN
   Attorney General,
BRIAN KANE*
   Chief Deputy Attorney General
Office of the Idaho Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 334-2400
Email: Brian.Kane@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

DANIEL CAMERON
   Attorney General of Kentucky
MARC MANLEY*
   Associate Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for Plaintiff Commonwealth of Kentucky*

AUSTIN KNUDSEN
   Attorney General
DAVID M.S. DEWHIRST\*
   Solicitor General
MONTANA DEPARTMENT OF JUSTICE
215 N Sanders St
Helena, MT 59601
P. (406) 444-2026
David.Dewhirst@mt.gov

*Counsel for Plaintiff State of Montana*

DOUGLAS J. PETERSON
   Attorney General
JAMES A. CAMPBELL\*
   Solicitor General
OFFICE OF THE NEBRASKA ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
jim.campbell@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

JOHN M. O'CONNOR
   Attorney General of Oklahoma
BRYAN CLEVELAND\*
   Deputy Solicitor General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921

*Counsel for Plaintiff State of Oklahoma*

LYNN FITCH
   Attorney General of Mississippi
JUSTIN L. MATHENY\*
   Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

DAVE YOST
   Ohio Attorney General
BENJAMIN M. FLOWERS\*
   Solicitor General
Office of the Ohio Attorney General
30 E. Broad St., 17th Fl.
Columbus, OH 43215
benjamin.flowers@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

ALAN WILSON
   South Carolina Attorney General
THOMAS T. HYDRICK\*
   Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

HERBERT H. SLATERY III
  Attorney General and Reporter of Tennessee
ANDRÉE S. BLUMSTEIN
  Solicitor General
CLARK L. HILDABRAND*
BRANDON J. SMITH*
  Assistant Solicitors General
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
(615) 253-5642
Clark.Hildabrand@ag.tn.gov
Brandon.Smith@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

PATRICK MORRISEY
  Attorney General
LINDSAY SEE*
  Solicitor General
Office of the West Virginia Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov

*Counsel for Plaintiff State of West Virginia*

* Pro hac vice application forthcoming

SEAN D. REYES
  Utah Attorney General
MELISSA HOLYOAK*
  Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for Plaintiff State of Utah*

BRIDGET HILL
  Attorney General of Wyoming
RYAN SCHELHAAS*
  Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*