IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| The STATE of ARIZONA, *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br>CENTERS FOR DISEASE CONTROL<br>& PREVENTION, *et al.*,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)         Civil Action No. 6:22-CV-00885-RRS-CBW |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................3

ARGUMENT .............................................................................................................................4

I.      Plaintiffs Have No Likelihood of Success on the Merits .............................................5

        A.      Plaintiffs have no likelihood success on their new claim challenging DHS's action.. ...................................................................................................................5

                1.      Plaintiffs are jurisdictionally-barred from challenging DHS's expedited removal policies in this Court, which, in any event, has no jurisdiction to enjoin DHS's use of the expedited removal process ................5

                2.      Plaintiffs' unpled claim does not challenge final agency action ........................9

                3.      Plaintiffs' new claim lacks merit ...................................................................10

        B.      Although not relevant to the present TRO, Plaintiffs are also unlikely to succeed on their claims alleged in the Amended Complaint ........................................12

II.     Plaintiffs Cannot Satisfy the Irreparable Harm or Balance of Equities Factors ......................15

CONCLUSION .......................................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

*Air Brake Sys., Inc. v. Mineta,*
    357 F.3d 632 (6th Cir. 2004) ........................................................................................... 10

*Alsaidi v. U.S. Dep't of State,*
    292 F. Supp. 3d 320 (D.D.C. 2018) ................................................................................. 16

*Arizona v. Biden,*
    No. 22-3272, --- F. 4th ----, 2022 WL 1090176 (6th Cir. Apr. 12, 2022) ........................... 12

*Bennett v. Spear,*
    520 U.S. 154 (1997) ......................................................................................................... 9

*Brumme v. I.N.S.,*
    275 F.3d 443 (5th Cir. 2001) ............................................................................................. 6

*Chambless Enterprises, LLC v. Redfield,*
    508 F. Supp. 3d 101 (W.D. La. 2020) ......................................................................... 13, 15

*Clark v. Prichard,*
    812 F.2d 991 (5th Cir. 1987) ............................................................................................. 4

*Dalton v. Specter,*
    511 U.S. 462 (1994) ......................................................................................................... 9

*Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.,*
    729 F. App'x 287 (5th Cir. 2018) ..................................................................................... 13

*Ellison v. Connor,*
    153 F.3d 247 (5th Cir. 1998) ........................................................................................... 13

*Friends of Animals v. Bernhardt,*
    961 F.3d 1197 (D.C. Cir. 2020) ....................................................................................... 13

*Hamama v. Adducci,*
    912 F.3d 869 (6th Cir. 2018), *cert. denied*, 141 S. Ct. 188 (2020) .................................... 9

*Havlik v. United States,*
    No. 18-CV-0692, 2018 WL 5117282 (W.D. La. Oct. 19, 2018) ........................................ 4

*Hight v. U.S. Dep't of Homeland Security,*
    2020 WL 12918345 (D.D.C. Mar. 30, 2020) ................................................................... 15

*Holland Am. Ins. Co. v. Succession of Roy,*
    777 F.2d 992 (5th Cir. 1985) ...................................................................................... 15, 16

*Huisha-Huisha v. Mayorkas,*
    27 F.4th 718 (D.C. Cir. 2022) .................................................................3

*Humana, Inc. v. Jacobson,*
    804 F.2d 1390 (5th Cir. 1986) ..........................................................2, 15

*Jordan v. Fisher,*
    823 F.3d 805 (5th Cir. 2016) ..................................................................4

*Lewis v. S.S. Baune,*
    534 F.2d 1115 (5th Cir. 1976) ..............................................................15

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ..............................................................................13

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973) ..............................................................................13

*Louisiana v. U.S. Army Corps of Eng'rs,*
    834 F.3d 574 (5th Cir. 2016) ..................................................................9

*Luminant Generation Co. v. EPA,*
    757 F.3d 439 (5th Cir. 2014) ................................................................10

*Nken v. Holder,*
    556 U.S. 418 (2009) ..............................................................................16

*Parsons v. U.S. Dep't of Just.,*
    878 F.3d 162 (6th Cir. 2017) ................................................................10

*Shah v. Director,*
    No. 3:19-CV-1164, 2019 WL 4254139 (W.D. La. Sept. 6, 2019) ..........7

*Shunaula v. Holder,*
    732 F.3d 143 (2d Cir. 2013) ...................................................................7

*Texas v. Rettig,*
    987 F.3d 518 (5th Cir. 2021) ................................................................10

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    136 S. Ct. 1807 (2016) ..........................................................................10

**STATUTES**

5 U.S.C. § 551 ...............................................................................................7

5 U.S.C. § 553 .......................................................................................11, 12

5 U.S.C. § 701 .........................................................................................7, 11

5 U.S.C. § 704 .................................................................................................................................7

8 U.S.C. § 1225 ............................................................................................................................ 1, 9

8 U.S.C. § 1252 ...................................................................................................................2, 5, 6, 7

42 U.S.C. § 265 ............................................................................................................................ 1, 3

42 U.S.C. § 268 .......................................................................................................................... 3, 12

**REGULATIONS**

8 C.F.R. § 235.3 ..............................................................................................................................9

42 C.F.R. § 71.40 ..........................................................................................................................11

85 Fed. Reg. 17,060 (Mar. 26, 2020) ............................................................................................3

86 Fed. Reg. 42,828 (Aug. 5, 2021) .......................................................................................... 3, 9

87 Fed. Reg. 19,941 (Apr. 1, 2022) ....................................................................................*passim*

## INTRODUCTION

This Court should deny Plaintiffs' motion for a temporary restraining order ("TRO").  The motion effectively seeks to enjoin the Department of Homeland Security ("DHS") from exercising its discretionary authority to take steps to operationalize the full resumption of immigration processing under Title 8 of the U.S. Code when the termination of the August 2021 order issued by the U.S. Centers for Disease Control & Prevention ("CDC") pursuant to 42 U.S.C. § 265 ("Title 42 order") is implemented on May 23, 2022.  In seeking this extraordinary relief, Plaintiffs claim that they will suffer "enormous *potential* harms," Pls.' Mem. in Supp. of TRO, ECF No. 24-1 ("Pls' Br.") at 3 (emphasis added), because DHS purportedly "has largely stopped using Title 42 to remove migrants from Northern Triangle countries and is instead processing them via Title 8 and expedited removal." *Id.* at 2 (quotation omitted).

Plaintiffs fail to show that they face a significant, non-speculative threat of injury.  In fact, they cannot.  DHS continues to prioritize Title 42 expulsions to the Northern Triangle countries of Guatemala, El Salvador, and Honduras.  Nuñez-Neto Decl. ¶ 17 (attached as Ex. A)  Although DHS recently increased its use of expedited removal under Title 8—which generally allows DHS to remove expeditiously an undocumented noncitizen to his or her home country without further hearing or review, *see* 8 U.S.C. § 1225(b)(1)—the total number of noncitizens from the Northern Triangle countries processed through expedited removal remains relatively small.  Nuñez-Neto Decl. ¶ 16. Moreover, as explained in the attached Declaration of Blas Nuñez-Neto, Acting Assistant Secretary for Border and Immigration Policy, the use of expedited removal has a greater deterrent effect than expelling a migrant to Mexico under Title 42.  A migrant removed pursuant to expedited removal is returned to his or her home country, is inadmissible for five years, and commits a felony if they re-entry during that period, whereas a migrant merely expelled to Mexico under Title 42 could repeatedly attempt to cross the border without immigration or criminal consequence and may eventually avoid detection.  *Id.* ¶¶ 11-12.  For this reason, the recidivism rate of single adults from Northern Triangle countries processed under Title 42 is nearly 50%, *id.* ¶ 10.  The number of single adults found to have credible fear and thus placed into full removal proceedings is a substantially smaller number of

individuals than the number who would seek to unlawfully enter the United States had they been expelled under Title 42—many of whom may ultimately evade detection and succeed in entering unlawfully, *id.* ¶ 19.  Thus, Plaintiffs cannot carry their burden of showing they face an "a significant threat of injury," *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986), to justify a TRO.

Plaintiffs' challenge to DHS's discretionary decision to increase its use of expedited removal in any event is unlikely to succeed.  That claim is not alleged in the Amended Complaint and cannot serve as a basis for a TRO.  Even if the claim had been alleged, review under the Administrative Procedure Act ("APA") is unavailable because DHS's discretionary law enforcement activities do not constitute final agency action.  And, contrary to Plaintiffs' assertion that DHS's action serves to "partially repeal[]" the Title 42 Order, Pls' Br. at 4, it is fully consistent with that Order.  Indeed, throughout the operation of the Title 42 scheme in this pandemic, DHS consistently has used expedited removal in a targeted, case-by-case fashion, pursuant to a law enforcement exception in the Title 42 order.  Nuñez-Neto Decl. ¶ 6.  The Title 42 Order itself already contemplated that DHS's use of such case-by-case exceptions would "gradually recommence[] normal migration operations."  86 Fed. Reg. 42,828, 42840 (Aug. 5, 2021).  DHS's recent increased use of expedited removal for noncitizens from the Northern Triangle countries is in preparation for the full resumption of Title 8 immigration processing, as contemplated in the CDC's order terminating the Title 42 order, 87 Fed. Reg. 19,941, 19,955-56 (Apr. 1, 2022) ("Termination Order").  Plaintiffs' argument that such actions violate the CDC's termination of the Title 42 order lack any merit, as CDC's termination of the order expressly states that DHS will exercise its case-by-case discretion as it prepares the transition to ordinary immigration processing.

Finally, this Court has no jurisdiction to grant Plaintiffs' requested relief because under 8 U.S.C. § 1252(a)(2)(A) "no court shall have jurisdiction to review" any cause or claim related to expedited removal proceedings or orders, other than as permitted in narrow circumstances inapplicable here, and 8 U.S.C. § 1252(e)(3) requires any systematic challenges to DHS's use of its expedited removal authority be filed in the U.S. District Court for the District of Columbia.  Further, 8 U.S.C. §§ 1252(e)(1) and (f)(1) precludes this Court from enjoining or restraining DHS's expedited

removal operations in any way.  Plaintiffs' requested TRO, including their request for information about DHS's plans to operationalize the full resumption of Title 8 immigration processing, improperly seeks to have the Court superintend DHS's discretionary use of its expedited removal authority and is clearly barred.

For these reasons, and those stated below, the Court should deny Plaintiffs' request for a TRO.

## BACKGROUND

Twenty-one states brought this suit to challenge CDC's termination of its Title 42 order that temporarily suspended the introduction of certain noncitizens traveling from Mexico and Canada who would otherwise be held in congregate settings in Ports of Entry or U.S. Border Patrol stations.  CDC issued the first Title 42 order in March 2020, as the world faced the historic COVID-19 pandemic. 85 Fed. Reg. 17,060 (Mar. 26, 2020).  Although Section 265 of Title 42 previously had been invoked to suspend the entry of noncitizens only once in its 127-year history, *see Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 723 (D.C. Cir. 2022), CDC determined that invoking the extraordinary power authorized by Section 265 was necessary to avert the serious danger of the introduction, transmission, or spread of COVID-19 into the United States.  85 Fed. Reg. at 17,060.  The March 2020 Title 42 order accordingly required covered noncitizens be expelled by DHS, which had been tasked to aid in the enforcement of the order pursuant to the Public Health Service Act, 42 U.S.C. § 268. 85 Fed. Reg. at 17,067.  However, the March 2020 order, as well as all subsequent Title 42 suspension orders, permit DHS to exercise its discretion to except covered noncitizens from the Title 42 Process for law enforcement or other purposes based on the totality of the circumstances.  *See, e.g.*, 86 Fed. Reg. 42,828, 42,841 (Aug. 5, 2021).

Because Title 42 orders may last only "for such period of time as [the CDC Director] may deem necessary" to avert the "serious danger of the introduction of a communicable disease into the United States," 42 U.S.C. § 265, all Title 42 orders were subject to monthly or bi-monthly reviews to ensure their continued necessity, 87 Fed. Reg. at 19,953.  On April 1, 2022, the CDC Director terminated the operative, August 2021 Title 42 order (and all prior suspension orders), but delayed implementation until May 23, 2022, "in order to provide DHS time to implement operational plans

3

for fully resuming [immigration] processing [under Title 8 of the U.S. Code]." *Id.* at 19,955. Plaintiffs have moved for a preliminary injunction to enjoin the implementation of the Termination Order. ECF No. 13. The Court has set a briefing schedule as well as a hearing for that motion. ECF Nos. 19 and 20.

Citing a Fox News article, *see* ECF No. 24-4, Plaintiffs now move for a TRO, claiming that "the irreparable harms that the States sought to avoid through their preliminary injunction motion may already be occurring *now*." Pls' Br. at 3 (emphasis in original). The article reported that "Border Patrol is not using the Title 42 public health order to remove many migrants from the Northern Triangle countries of Guatemala, Honduras or El Salvador, more than a month before the Biden administration lifts the order altogether." *Id.* at 2. Quoting the article, Plaintiffs claim that "while Title 42 may be 'technically still in place,' the reality on the ground is that DHS 'has largely stopped using Title 42 to remove migrants from Northern Triangle countries, and is instead processing them via Title 8 and expedited removal.'" *Id.* Plaintiffs reached this conclusion notwithstanding the fact that the article also reported the U.S. Customs and Border Protection (CBP)'s statement that "expulsions under Title 42 for those nationalities 'remain in effect,'" and that CBP has not stopped expelling such migrants.

Plaintiffs seek a TRO to restrain Defendants from: "taking any action that either (1) formally implements the Title 42 Termination or (2) has substantially similar effect" and "from processing migrants from El Salvador, Guatemala, and Honduras under Title 8 based upon any lack of capacity in flights to those countries." ECF No. 24-2 (Proposed Order). They further seek an order requiring DHS to submit a declaration "explaining any recent significant changes in its implementation of Title 42" that includes at least seven categories of information. *Id.*

## ARGUMENT

To secure a temporary restraining order, a plaintiff must show (1) "a substantial threat of irreparable injury," (2) "a substantial likelihood of success on the merits," (3) "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and (4) "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805,

809 (5th Cir. 2016).  "The party seeking a TRO or preliminary injunction carries the 'heavy burden' of showing that his request meets each of these requirements." *Havlik v. United States*, No. 18-CV-0692, 2018 WL 5117282, at *2 (W.D. La. Oct. 19, 2018) (quoting *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)).

### I.     Plaintiffs Have No Likelihood of Success on the Merits

As the Court is aware, pursuant to the briefing schedule entered by this Court, Defendants will be submitting an opposition to Plaintiffs' motion for preliminary injunction ("PI") on April 29, 2022, fully addressing Plaintiffs' likelihood of success on the merits of their claims.  Because Plaintiffs' motion for a TRO focuses only on the propriety of DHS's recent increased use of expedited removal and the supposed resultant harm,[1] Defendants will primarily address that new claim but will also provide a summary of their arguments demonstrating that Plaintiffs have no likelihood of success on the merits of the claims alleged in the Amended Complaint.

### A.   Plaintiffs have no likelihood success on their new, unpled claim challenging DHS's action.

In their motion for a TRO, Plaintiffs seek to raise a claim that is not pled in the Amended Complaint—that "DHS cannot lawfully discharge its 'duty … to aid' enforcement of Title 42 by partially repealing it under its own putative authority."  Pls' Br. at 4.  According to Plaintiffs, "to the extent that DHS believes that gradual implementation of the Termination Order is appropriate, such incremental steps could only begin on May 23."  *Id.*  In effect, Plaintiffs are claiming that that DHS's increased use of expedited removal is unlawful agency action under the APA.  This claim is jurisdictionally barred, does not challenge final agency action under the APA, and fails on the merits.

---

[1] In support of their motion for a TRO, Plaintiffs attempt to incorporate by reference arguments made in their PI motion.  *See* Pls' Br. at 3.  Those arguments relating to the CDC's April 1 Termination Order, however, have no bearing on the likelihood of Plaintiffs' prevailing on not-yet asserted claims challenging DHS's discretionary immigration actions at issue in this TRO.

1.  **Plaintiffs are jurisdictionally barred from challenging DHS's expedited removal policies in this Court, which, in any event, has no jurisdiction to enjoin DHS's use of the expedited removal process.**

Under the Immigration and Nationality Act ("INA"), Congress has significantly limited the power of federal courts to review DHS's exercise of expedited removal authority.  *See* 8 U.S.C. § 1252; *Brumme v. I.N.S.*, 275 F.3d 443, 447 (5th Cir. 2001).[2]  8 U.S.C. § 1252(g) prohibits any court from reviewing any decision by DHS "to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The purpose of that provision specifically, and section 1252 generally is to "protec[t] the Executive's discretion" to execute removal orders or commence removal proceedings from undue interference by the courts.  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999).

With respect to "[r]eview relating to section 1225(b)(1)," the provision authorizing the expedited removal system, "[n]otwithstanding any other provision of law," "no court shall have jurisdiction to review" other than permitted by section 1252(e), "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," any "decision by the [Secretary] to invoke the provisions of such section," and any "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)."  8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv).  In addition, without exception, the INA eliminates jurisdiction to review "the application of [section 1225(b)(1)] to individual aliens."  Section 1252(e) restores jurisdiction in two limited circumstances:  (1) judicial review of individual orders on three limited grounds raised by individual noncitizens not relevant here, 8 U.S.C. § 1252(e)(2); and (2) limited "systemic" challenges to regulations or written policies implementing the expedited-removal system, which must be filed exclusively in the U.S. District Court

---

[2] *See, e.g.*, 8 U.S.C. § 1252(a)(2)(A) (providing that, "[n]otwithstanding any other provision of law (statutory or nonstatutory), … no court shall have jurisdiction to review … any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) [i.e., an order of expedited removal]," *id.*, except as provided in section 1252(e)).

for the District of Columbia within a certain timeframe.  8 U.S.C. § 1252(e)(3)(A), (B).[3]  *See Brumme*, 275 F.3d at 447 ("The IIRIRA recognizes limited judicial review, in the United States District Court for the District of Columbia, of certain challenges to the expedited removal 'system.'"); *Shah v. Director*, No. 3:19-CV-1164, 2019 WL 4254139, at *3 (W.D. La. Sept. 6, 2019) (explaining that section 1252(e)(3) requires any "challenges on the validity of the [expedited removal] system" to be brought in the District of Columbia and that no jurisdiction existed for any such challenge in the Western District of Louisiana); *see also Shunaula v. Holder*, 732 F.3d 143, 146 (2d Cir. 2013) ("[Section] 1252(e)(3) provides for review of constitutional challenges to the validity of the expedited removal system and statutory challenges to its implementing regulations and written policies".).  Nothing in section 1252(e)(2) or (e)(3) restores the jurisdiction eliminated by section 1252(a)(2)(A) to review an APA challenge to any decision or action by DHS to apply the expedited removal provisions to any specific noncitizen. Indeed, "[t]he expedited removal statutes are express and unambiguous. The clarity of the language forecloses acrobatic attempts at interpretation" and "makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute." *Castro v. U.S. Dep't of Homeland Security*, 835 F.3d 422, 430, 432 (3d Cir. 2016); *Make the Rd. New York v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020); (explaining that if jurisdiction exists for "judicial review 'relating to section 1225(b)(1),'" it exists only "as provided in subsection (e)").

Plaintiffs might respond that they are not trying to restrain DHS's use of expedited removal, but rather are attempting to prevent DHS from implementing the Terminator Order prior to May 23, 2022.  But regardless of how Plaintiffs characterize their motion, they are clearly attempting to

---

[3] Section 1252(e)(3), titled "[c]hallenges on [the] validity of the system," authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court, "limited to  determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law," if such suits are filed within "60 days" of when the challenged action "is first implemented."  8 U.S.C. § 1252(e)(3)(A)-(B).

challenge, on a systemic basis, DHS's use of expedited removal.  Specifically, they want to enjoin DHS's exercise of authority in a particular way; in their Proposed Order, for example, they request that "DHS [be] restrained from processing migrants from El Salvador, Guatemala, and Honduras under Title 8 based upon any lack of capacity in flights to those countries."  ECF No. 24-2 at 1. Plaintiffs also seek an order requiring DHS to submit a declaration including particularized information regarding its expedited removal policies, *id.* at 2-3, "so that the States can consider whether additional relief is appropriate to seek."  Pls' Br. at 4.  The additional relief is thus clearly intended to further prohibit DHS from exercising its discretion to use expedited removal.

Even if the Court otherwise has jurisdiction, notwithstanding sections 1252(a)(2)(A) and (e), the court lacks authority to issue any injunctive relief.  First, section 1252(e)(1), titled "[l]imitations on relief," provides that "[w]ithout regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may … enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." No subsequent section authorizes the relief Plaintiffs seek.  Sections 1252(e)(2) and (4) allow only that an individual noncitizen be placed in full removal proceedings.  And section 1252(e)(3) allows only for a "determination" in the District of Columbia that the challenged action is "not consistent with applicable provisions or this subchapter or is otherwise in violation of law."  8 U.S.C. § 1252(e)(3)(A)(ii). "No subsequent paragraph of Section 1252(e)[] specifically authorizes the Court to grant … injunctive relief."  *Natt v. Wolf*, No. 1:20-CV-427-P, 2020 WL 4032517, at *1 (W.D. La. June 10, 2020), *report and recommendation adopted*, No. 1:20-CV-00427, 2020 WL 4018658 (W.D. La. July 16, 2020); *Pal v. U.S. Dep't of Homeland Sec.*, No. 1:20-CV-0011-P, 2020 WL 9720424, at *1 (W.D. La. Jan. 7, 2020), *report and recommendation adopted*, No. 1:20-CV-0011-P, 2020 WL 1166492 (W.D. La. Mar. 9, 2020) (same).

Second, the Court is also precluded from enjoining DHS's use of expedited removal under 8 U.S.C. § 1252(f), which provides that

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [certain provisions, including that authorizing expedited removal], … other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).  Again, no matter how Plaintiffs characterize their motion (i.e., "[r]egardless of the nature of the action or claim," *id.*), the effect of Plaintiffs' requested injunction would be to restrain DHS's use of expedited removal.  *See Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (overturning injunction as barred by Section 1252(f)(1) and rejecting argument that "district court was not enjoining or restraining the statutes, but rather interpreting them to ensure they are correctly enforced"), *cert. denied*, 141 S. Ct. 188 (2020).  Plaintiffs are attempting to insert themselves and the Court as the supervisors of DHS's exercise of its expedited removal authority to determine whether DHS's activities have the formal or "de facto … similar effect" of implementing the Termination Order.  Pls' Br. at 4.  Under Plaintiffs' approach, any time DHS uses its expedited removal authority over the next month, it would face the prospect of being accused of violating the requested TRO.  Under 8 U.S.C. § 1252(f)(1), however, the Court has no jurisdiction to issue an injunction to prevent DHS from using that authority.  *See Hamama*, 912 F.3d at 880 ("If … limitations on what the government can and cannot do under the removal and detention provisions are not 'restraints,' it is not at all clear what would qualify as a restraint.").  Accordingly, the Court should deny Plaintiffs' TRO motion on this basis alone.

### 2.  Plaintiffs' new, unpled claim does not challenge final agency action

Plaintiffs cannot seek a TRO based on a claim that they have not alleged in the Amended Complaint.  Moreover, the challenge is unreviewable under the APA.  The APA expressly limits judicial review to "final agency action."  5 U.S.C. § 704; *see also Dalton v. Specter*, 511 U.S. 462, 469 (1994) (final agency action is "the prerequisite to review under the APA").  An "agency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. §§ 551(13), 701(b)(2).  An agency action is not "final" unless it "mark[s] the consummation of the agency's decision-making process" and is "one by which rights or obligations

have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

DHS's challenged action does not meet the *Bennett* test because it is merely an exercise of law enforcement discretion that has no "direct and appreciable legal consequences" on the noncitizens ultimately subject to expedited removal, let alone on Plaintiff States. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1814 (2016). To the extent a noncitizen is removed, his or her rights and obligations are determined not by that exercise of prosecutorial discretion, but by the actual expedited removal process itself. *Cf. Luminant Generation Co. v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014) (finding EPA's notice of violation was not a final agency action because the "notice does not itself determine [the company's] rights or obligations, and no legal consequences flow from the issuance of the notice"). Nor does DHS's challenged action create new legal rights or obligations for any other person or entity. *See Texas v. Rettig*, 987 F.3d 518, 530 (5th Cir. 2021) (holding HHS guidance was not final agency action where it "did not create any new obligations or consequences," but rather restated a pre-existing requirement). And it certainly does not purport to impose any legal duties or obligations on States. *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 641 (6th Cir. 2004) ("[a]n agency's determination of 'rights or obligations' generally stems from an agency action that is directly binding on the party seeking review"). To the extent Plaintiffs contend that they will be harmed by the challenged DHS action because of increased costs to the States, the law is clear that "harms caused by agency decisions are not legal consequences if they stem from independent actions taken by third parties." *Parsons v. U.S. Dep't of Just.*, 878 F.3d 162, 168 (6th Cir. 2017); *see also id.* at 169 ("[P]ractical consequences are not legal harms that can transform [a] Report[ ] into a final agency order and trigger our jurisdiction."), and *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016) (holding that downstream consequences do not create "rights and obligations" sufficient to permit review under the APA, because "such consequences are practical, as opposed to legal, ones"). And, more broadly, "adverse economic effects accompany many forms of indisputably non-final government action." *Air Brake Sys.*, 357 F.3d at 645.

10

### 3.   Plaintiffs' new, unpled claim lacks merit

Even if the challenged DHS action were reviewable under the APA, Plaintiffs are unlikely to succeed on their new, unpled APA claim because DHS's increased use of expedited removal is reasonably based on law enforcement concerns and fully consistent with the August 2021 Title 42 order—the termination of which Plaintiffs seek to enjoin via their PI motion.  As with all prior Title 42 orders issued during the pandemic, the August Order excepts from its scope "[p]ersons whom customs officers determine, with approval from a supervisor, should be excepted from this Order based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, humanitarian, and public health interests."  86 Fed. Reg. 42,828, 42,841 (August 5, 2021).  The law enforcement exception permits DHS to exercise its discretion to process an otherwise covered noncitizen under Title 8's expedited removal process.  The expedited removal process allows DHS to remove an undocumented noncitizen to his or her home country without further hearing or review, *see* 8 U.S.C. § 1225(b)(1), unless the noncitizen claims a fear of persecution or torture, or expresses an intent to apply for asylum, *id.* § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4).  If, after an interview with an asylum officer, the noncitizen is determined to have a credible fear of persecution or torture, the noncitizen is referred for removal proceedings.  8 C.F.R. § 208.30(f).

For all of the significant law enforcement reasons discussed by the Acting Assistant Secretary for Border and Immigration Policy, DHS is properly using expedited removal as contemplated by the August Order.  *See* Nuñez-Neto Decl. ¶ 4.  Indeed, as the Acting Assistant Secretary explaines, DHS consistently has used the law enforcement exception in the Title 42 orders throughout the pandemic. *Id.* ¶ 6.  The current, operative August 2021 Title 42 order acknowledged as much:  "CDC's expectation is that although this Order will continue with respect to [single adults] and [family units], DHS will use case-by-case exceptions based on the totality of the circumstances where appropriate to except individual [single adults] and [family units] in a manner that gradually recommences normal migration operations as COVID–19 health and safety protocols and capacity allows."  86 Fed. Reg. at 42,840; *see also id.* at 42,838 ("CDC understands that DHS intends to continue exercising case-by-case exceptions for individual [single adults] and [family units] based on a totality of the circumstances as

11

CDC transitions away from this Order.").  The Termination Order too recognizes that DHS would be using its discretionary authority to except covered noncitizens from the Title 42 process: "During this temporary period of continued application of the August Order, DHS will continue to exercise its discretion to issue case-by-case exceptions based on the totality of the circumstances as set forth in the August Order."  87 Fed. Reg. at 19,956.

Moreover, the purpose of delaying implementation of the Termination Order is to allow time for DHS to *operationalize* before May 23.  *See* 87 Fed. Reg. at 19,955 ("Based on DHS's recommendation and in order to provide DHS time to implement operational plans for fully resuming Title 8 processing … this termination will be implemented on May 23, 2022."); *id.* ("CDC recognizes that resumption of border operations under Title 8 authorities … requires time to operationalize …."). DHS cannot simply flip a switch on May 23; accordingly, the Termination Order further noted DHS's representation "that over the next several weeks [DHS] is taking important steps to implement processes in preparation for the full resumption of border operations pursuant to Title 8 authorities, in a manner that promotes the health and safety of migrants, CBP employees, and the local communities."  *Id.*  The increased use of expedited removal is part of the needed transition.  As the Acting Assistant Secretary explains, "[t]he increased use of expedited removal will help to ensure that all the DHS components involved in the expedited removal process—including Customs and Border Protection, U.S. Immigration and Customs Enforcement, and U.S. Citizenship and Immigration Services—as well as the Executive Office for Immigration Review at the Department of Justice, which oversees the immigration court system, are ready to fully operationalize the expanded use of expedited removal by May 23, 2022."  Nuñez-Neto Decl. ¶ 16.  The challenged DHS's action therefore cannot constitute a basis for the requested TRO.

**B. Although not relevant to the present TRO motion, Plaintiffs are also unlikely to succeed on their claims alleged in the Amended Complaint.**

Plaintiffs' TRO motion incorporates the legal arguments set forth in their preliminary injunction brief filed in this action.  Those arguments, however, are irrelevant to the present TRO motion.  Plaintiffs' claims in this action, and their preliminary injunction motion, challenge the CDC's

issuance of the April 1 Termination Order.  The TRO motion, by contrast, does not challenge the CDC's decision to issue the Order.  It instead challenges actions by DHS to enforce the immigration laws—specifically, to use expedited removal to detain and promptly remove to their home countries certain single adults from Northern Triangle countries.  Whether Plaintiffs' are likely to succeed on their APA challenge to the CDC's Termination Order has no bearing on their challenge to DHS's actions in this TRO motion.

In any event, Plaintiffs also are not likely to succeed on their challenge to the Termination Order.  Plaintiffs seek to override the CDC Director's expert judgment in issuing the Termination Order as arbitrary and capricious and for failure to conduct notice-and-comment rulemaking.  They have no likelihood of success because as a threshold matter, they lack standing to sue.  *See, e.g.*, *Arizona v. Biden*, No. 22-3272, --- F. 4th ---, 2022 WL 1090176, at *2 (6th Cir. Apr. 12, 2022) (concluding that plaintiff States lacked standing to challenge a DHS memorandum outlining its immigration enforcement priorities).  Review is also precluded because third parties have no legally cognizable interest in enforcement of the laws against others, including under the INA.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Further, their claimed injuries associated with a potential increase of noncitizens in their states are outside Section 265's zone of interests.  *See, e.g.*, *Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 297 (5th Cir. 2018) (holding that pocketbook injuries did not fall within the zone of interests to allow an APA claim challenging the government's actions under an environmental statute).  Moreover, the CDC Director's decisions under Section 265 are "committed to the agency['s] discretion by law" and therefore are not reviewable under the APA.  5 U.S.C. § 701(a)(2); *see Lincoln v. Vigil*, 508 U.S. 182, 191 (1993); *Ellison v. Connor*, 153 F.3d 247, 253 (5th Cir. 1998).

Plaintiffs also are unlikely to succeed in their notice-and-comment challenge to the Termination Order because employing the notice-and-comment rulemaking procedures is "impracticable, unnecessary, [and] contrary to the public interest" in the circumstances here.  5 U.S.C. § 553(b)(B).  The Termination Order, like the August 2021 order that it terminates, was issued pursuant to a duly promulgated regulation that recognizes the CDC Director's discretion under

Section 265 to impose a suspension order, allows CDC to flexibly respond to rapidly changing public health circumstances without notice and comment, and also limits CDC's authority to maintain a suspension order absent requisite public health findings.  *See* 42 C.F.R. § 71.40.  Because the Title 42 orders issued to date were temporary emergency measures reassessed every 30 or 60 days to determine their continued necessity to protect public health, 87 Fed. Reg. at 19,953, it was impracticable, unnecessary, and contrary to the public interest for CDC to continually engage in notice-and-comment rulemaking.  *Cf. Chambless Enterprises, LLC v. Redfield*, 508 F. Supp. 3d 101, 118 (W.D. La. 2020) (concluding that a CDC order was an emergency action authorized by a regulation that did not "require yet another round of notice and comment before [the order could] take effect").  Were it otherwise, the August 2021 order, which Plaintiffs hope to maintain, would similarly be invalid because it superseded an earlier suspension order issued 10 months earlier.  *See Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1205 (D.C. Cir. 2020) (teaching "that [the APA] 'mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance.'").

The fact that CDC has delayed implementation to account for DHS's need for time to orderly and safely terminate the August 2021 order by no means suggests notice-and-comment rulemaking is required after the CDC Director has already determined, in her expert judgment, that a suspension of entry is no longer necessary to protect the public health.  Both the Termination Order and all prior Title 42 orders were products of periodic reassessment, and CDC did not know the outcome until the reassessment was concluded at the end of the 30- or 60-day review period.  And DHS, the agency charged by the Public Health Service Act to aide in the implementation of Title 42 orders, *see* 42 U.S.C. § 268, should not be expected to be able to change its operations overnight.  Finally, the Termination Order also falls within the foreign affairs exception to the notice-and-comment requirement, *id.* § 553(a)(1), as it implicates ongoing discussions between the United States and Mexico and Canada regarding how best to control COVID-19 transmission over shared borders and therefore directly "involve[s] … a … foreign affairs function of the United States."  *Id.*

Similarly unlikely to succeed is Plaintiffs' argument that the Termination Order is arbitrary and capricious because it fails to account for the potential impact of immigration on the States and the

14

States' reliance interest on the continued existence of Title 42, Section 265 orders.  Section 265 is a public health authority narrowly focused on preventing the serious dangers posed by the spread of communicable diseases into the United States; it is not an immigration "safety valve" designed to regulate the flow of migration, as Plaintiffs seem to believe, *see* Mem. in Supp. of Mot. for Preliminary Inj. ["PI"] at 1.  The economic and other non-Covid-19 related impacts of immigration on the States simply are not relevant factors, nor does CDC have the authority to use Section 265 to fix the perceived broken immigration system.  Importantly, CDC did consider States' reliance interests, but determined that to the extent States or local governments relied on the continuation of Title 42 orders, such reliance was misplaced because Title 42 orders were by their terms temporary measures that CDC regularly reevaluated to determine their continued necessity.  87 Fed. Reg. at 19,953-54.  Further, CDC determined that to the extent any reliance interests reasonably exist, none outweighed the importance of terminating the August 2021 order (and all prior orders) in light of their extraordinary nature and the limitations on CDC's authority.  *Id.*  The Title 42 orders are also replete with references to the resumption of the congressionally-mandated regular immigration processing.  *See, e.g.*, 87 Fed. Reg. 19,954 & n.166.  In sum, CDC engaged in reasoned decisionmaking, and the APA does not require more.

## II.     Plaintiffs Cannot Satisfy the Irreparable Harm or Balance of Equities Factors

The remaining injunctive relief factors also weigh against issuance of a TRO.  "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976).  To establish irreparable injury, "a party must demonstrate 'a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm.'" *Chambless Enterprises, LLC v. Redfield*, 508 F. Supp. 3d 101, 119 (W.D. La. 2020) (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)).  A clear showing of irreparable harm cannot be based on a "[s]peculative injury …. [T]here must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

 Here, Plaintiffs seek a TRO by alleging fear that "the irreparable harms that the States sought

to avoid through their preliminary injunction motion may already be occurring *now*."  Pls' Br. at 3 (emphasis in original).  The fact that Plaintiffs are not aware of whether they are being irreparably harmed "now" undermines their motion for a TRO.  So is their request for detailed information from DHS to determine whether they are being harmed.  *See* Pls' Br. at 5.  Plaintiffs seek, for example, "statistics for the number of migrants processed under Title 42 and Title 8 by country for each week over the past six months so that any meaningful changes in policy can be detected."  *Id.*  In essence, Plaintiffs are on a fishing expedition in search of data that might prove that they have been injured rather than carrying their burden to show that they are already subject to a significant threat of injury. This is improper.  *See, e.g.*, *Hight v. U.S. Dep't of Homeland Security*, 2020 WL 12918345, at *2 (D.D.C. Mar. 30, 2020) (rejecting request for records that might reveal "inconsistent" agency action as a "fishing expedition that the APA does not countenance").  "[T]he APA is not a discovery mechanism."  *Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d 320, 328 (D.D.C. 2018).  Plaintiffs may not seek discovery via a TRO in the hopes of unearthing evidence to support their claim of injury.

In their preliminary injunction motion, Plaintiffs primarily argue that they will suffer irreparable harm "in the form of increased law enforcement, education, and health care spending."  PI at 40.  While Plaintiffs now argue that "the enormous potential harms identified in [their] . . . preliminary injunction motion are likely already occurring," Pls' Br. at 3, they cite scant evidence supporting their assertion.  *See Holland*, 777 F.2d at 997 (a single affidavit speculating about a potential injury held insufficient to show irreparable harm).  Their only affidavit is from an attorney representing one of the Plaintiff States who relies on a media report and recounts his conversation with a union president about purported DHS operations, but does not even mention harm to the States.  Plaintiffs provide no evidence that DHS's current activities in preparation for the resumption of normal immigration processing are imposing such spending costs.  Instead, they contend that "agents are being pulled from the field as a consequence of DHS's actions," and speculate that this "increases the number of aliens who arrive into the Plaintiff States undetected and thus not processed under either Title 8 or Title 42."  Pls' Br. at 3.  Again, this rank speculation is insufficient to establish irreparable harm.

16

In contrast, DHS's declaration shows that of those noncitizens from the Northern Triangle countries placed by DHS in expedited removal proceedings, 88 percent have been removed or are in the process of being removed.  Only 12 percent are found to have a credible fear and are referred for removal proceedings.  Nuñez-Neto Decl. ¶ 18.  Those individuals are a substantially smaller number than the number who would seek to unlawfully enter the United States had they been expelled under Title 42—many of whom may ultimately evade detection and succeed in entering unlawfully.  *Id.* ¶ 19.

Finally, an order enjoining DHS's activities would be contrary to the federal government and the public's interests, which merge here.  *Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the interests of the government and the public "merge" in suits against the federal government).  DHS's activities are driven by the law enforcement purpose of improving DHS's deterrent capabilities and readying for the return to full immigration processing.  As the Acting Assistant Secretary of for Border and Immigration Policy explains, the use of expedited removal is a key tool that DHS will need to fully employ at the border by May 23 in order to humanely and efficiently remove individuals without proper documentation that do not have a viable claim of asylum or other lawful basis to remain in the United States.  Nuñez-Neto Decl. ¶ 15.

Accordingly, the balance of equities strongly counsels against entry of a TRO.

## CONCLUSION

For these reasons, Plaintiffs' motion for a temporary restraining order should be denied.


Dated:  April 22, 2022                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General
                                           U.S. Department of Justice, Civil Division

                                          JEAN LIN
                                          Special Litigation Counsel (NY #4074530)

                                          /s/ Jonathan D. Kossak
                                          JONATHAN D. KOSSAK (DC #991478)
                                          JOHN ROBINSON (DC #1044072)
                                          Trial Attorneys

1100 L St. N.W.
Washington, DC 20530
U.S. Department of Justice, Civil Division
Federal Program Branch
(202) 514-3716
Jean.lin@doj.gov
Jonathan.kossak@usdoj.gov
John.j.robinson@usdoj.gov
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify I served this document today by filing it using the Court's CM/ECF system, which will automatically notify all counsel of record.

Dated:  April 22, 2022                                    _____/s/ Jonathan Kossak_____