# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| The STATE of ARIZONA, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Civil Action No. 6:22-cv-00885-RRS-CBW |
| ) | |
| CENTERS FOR DISEASE CONTROL, ) | |
| AND PREVENTION, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

**DECLARATION OF BLAS NUÑEZ-NETO**

I, Blas Nuñez-Neto, pursuant to 28 U.S.C. § 1746 and based upon my personal knowledge, and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am the Acting Assistant Secretary for Border and Immigration Policy at the Department of Homeland Security (DHS) as of October 1, 2021. My permanent role is Chief Operating Officer at U.S. Customs and Border Protection (CBP), which I began on March 5, 2021. Since August 24, 2021, I have been concurrently serving as the Vice Chair for the Secretary of Homeland Security's Southwest Border Taskforce. I also previously served at DHS as an Advisor to CBP Commissioner Gil Kerlikowske from January 12, 2015 to January 16, 2017.

2. I am familiar with the CDC's April 1, 2022 Order terminating the Public Health Reassessment and Order Suspending the Right to Introduce Certain Persons from

1

       Countries Where a Quarantinable Communicable Disease Exists, and all related prior orders, which is to be implemented on May 23, 2022. 87 Fed. Reg. 19,941 (Apr. 6, 2022) [hereinafter the "April Order"].

3. This April Order terminates CDC's August 2021 Order, which continued a series of orders issued pursuant to 42 U.S.C. Sections 265, 268, suspending the right to introduce certain noncitizens traveling from Mexico and Canada into the United States to protect against the serious danger of the introduction of COVID-19 into the United States. Pursuant to the April Order, the "[t]ermination will be implemented on May 23, 2022, to enable the Department of Homeland Security (DHS) to implement appropriate COVID-10 mitigation protocols. . . and prepare for full resumption of regular migration processing under Title 8 authorities." 87 Fed. Reg. at 19,942. The CDC emphasized that "DHS has represented that over the next several weeks it is taking important steps to implement processes in preparation for the full resumption of border operations pursuant to Title 8 authorities, in a manner that promotes the health and safety of migrants, CBP employees, and the local communities." *Id*. at 19,955. CDC further specified in the April Order that "it is CDC's expectation that DHS will continue to apply exceptions outlined in the August Order to covered noncitizens as appropriate, including the exception based on the totality of an individual's circumstance on a case-by-case basis," to include consideration of significant law enforcement, officer and public safety, humanitarian and public health interests. As also stated in the August Order, CDC believes that the gradual resumption of normal border operations under Title 8 is a key component of the delay between the issuance of the Order and the full termination of its use at the border: "With careful planning,

|   |   |
|---|---|
|   | this may be initiated in a stepwise manner that complies with COVID-19 protocols." 86 Fed. Reg. 42828, 42831 (Aug. 5, 2021); *see also id.* at 42837; 87 Fed. Reg. 19941, 19954 n.166. |
| 4. | The CDC's April Order acknowledges that prior to implementation, the August 2021 Order would govern as to single adults (SA)] and family units (FMU)." *See* 87 Fed. Reg. at 19,954 & n.166.  Under that Order, DHS is expected to "use case-by-case exceptions based on the totality of the circumstances where appropriate to except individual SA and FMU in a manner that gradually recommences normal migration operations as COVID-19 health and safety protocols and capacity allows."  86 Fed. Reg. at 42,840. |
| 5. | I am also familiar with the Motion for a Temporary Restraining Order filed in this case, *Arizona v. CDC,* No. 6:22-cv-00885 (W.D La.) (filed April 21, 2022), brought by 21 States challenging the April Order.  I understand that the Motion for a Temporary Restraining Order contends that DHS has improperly and prematurely shifted the processing of migrants who Plaintiffs believe should be expelled under Title 42 authorities to Title 8 of the U.S. Code, including the use of expedited removal, in advance of the April Order's publicly announced May 23, 2022, implementation date. |

**Use of Expedited Removal**

|   |   |
|---|---|
| 6. | The use of expedited removal for select migrants encountered at the southwest land border is not novel.  It has been a tool employed throughout the course of the pandemic for as long as the CDC's Title 42 Orders have been in place.  As noted above, all Title 42 Orders have granted DHS discretion to except from the scope of the Orders otherwise covered noncitizens on a case-by-case assessment of the totality of the circumstances, |

3

including consideration of significant law enforcement interest. Pursuant to this exception authority, DHS has processed approximately 5% of single adults from El Salvador, Guatemala, and Honduras (the "Northern Triangle") pursuant to Title 8 authorities, including expedited removal, during the entire time frame in which the CDC Title 42 Orders have been in place.

7. Pursuant to the expedited removal process, certain inadmissible noncitizens may be ordered removed by an immigration officer, without further hearing or review.

8. If a person placed in expedited removal indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, that noncitizen is referred for a credible fear interview before an asylum officer.  The asylum officer interviews the noncitizen, reviews relevant facts, and determines whether the noncitizen has a credible fear of torture or prosecution. If the asylum officer finds that the noncitizen has a credible fear of torture or prosecution, the noncitizen is referred for full removal proceedings under Section 1229a of Title 8 of the U.S. Code, at which point the noncitizen may apply for asylum or other protection from removal. If a person is not found to have a credible fear of torture or prosecution, that person is subject to removal.

**Processing and Recidivism under Title 42**

9. Individuals can only be processed under Title 42 if the Government of Mexico (GOM), or their home countries, agrees to receive them.  The GOM has generally placed restrictions on the nationalities it will accept to be returned pursuant to Title 42, and many countries have also either refused to take back their citizens who are processed under this authority or placed sufficient restrictions on the ability to return their citizens that the expulsion of those individuals under Title 42 is not viable. The main nationalities that can generally be

expelled under Title 42 to Mexico are currently Mexican nationals and citizens of El Salvador, Guatemala, and Honduras.

10. The recidivism rates for single adults returned to Mexico pursuant to Title 42 authorities—that is the percentage of individuals apprehended more than one time by the USBP within a fiscal year—are extraordinarily high. For the first quarter of FY 2022 (i.e., October 1, 2021-Dec. 31, 2021), the recidivism rates of single adults from El Salvador, Guatemala, and Honduras processed under Title 42 was 49%. That is, almost half of single adults from these countries that are expelled under Title 42 are re-encountered at the border shortly thereafter. By comparison the recidivist rates of those processed pursuant to Title 8 was 29%. Data from prior years reflects a similar dichotomy: In FY 2021, the recidivism rate for those previously processed under Title 42 was 49%, compared to 39% for those previously processed under Title 8. And in FY 2020, it was 50% and 24%, respectively.

11. Importantly, there are no immigration or criminal consequences for recidivists previously processed pursuant to Title 42. Those previously processed pursuant to Title 42 can keep trying to enter, and be expelled, multiple times, with no consequence for this behavior other than repeat expulsion. And, an unknown—but likely significant—proportion of these individuals evade detection during their repeat attempts and succeed in entering the United States illegally.

12. There is, however, both an immigration and criminal consequence for recidivists who have been previously removed under Title 8. Subsequent re-entry is a felony, pursuant to 18 USC § 236(a), with the significant criminal consequences that accompany a felony

   conviction. In addition, those removed pursuant to expedited removal are inadmissible for five years from the date of removal.

13. In order to address this issue and impose consequences for repeat unauthorized entry, DHS has been exercising its exception authority for some time to put single adults who have been previously expelled to Mexico and are subsequently re-encountered into expedited removal.

**Increased use of Expedited Removal is Fully Consistent with the Order**

14. Use of expedited removal for amenable populations serves important law enforcement goals. Individuals from Northern Triangle countries that are placed into expedited removal and returned to their home countries are farther from the border than if they were simply expelled into Mexico pursuant to Title 42. And, as noted above, those who nonetheless seek to re-enter will face criminal sanction and be barred from lawful admission for a period of five years. DHS uses Title 8 in this manner for a legitimate law enforcement purpose which is consistent with the exception process included in the CDC's Title 42 Orders.

15. Additionally, expedited removal is a key tool that DHS will employ across the border when Title 42 is lifted, in order to humanely and efficiently remove individuals without proper documentation that do not have a viable claim of asylum or other lawful basis to remain in the United States.

16. As a result, and as part of the efforts to prepare for the ultimate lifting of Title 42, DHS has begun in recent weeks to increase the use of expedited removal for some single adults eligible for removal who would otherwise be expelled pursuant to Title 42. During the week ending on April 21, 2022, 807 out of 5,858 (14%) single adults from the Northern

Triangle were placed into expedited removal. The increased use of expedited removal will help to ensure that all the DHS components involved in the expedited removal process—including Customs and Border Protection, U.S. Immigration and Customs Enforcement, and U.S. Citizenship and Immigration Services—as well as the Executive Office for Immigration Review at the Department of Justice, which oversees the immigration court system, are ready to fully operationalize the expanded use of expedited removal by May 23, 2022. This is fully consistent with the CDC's Order, including the expectation that DHS will use the coming weeks to "prepare for full resumption of regular migration proceedings under Title 8 authorities." 87 Fed. Reg. at 19,955. It remains the case that the August 2021 Title 42 order is fully in effect.

17. DHS is continuing to prioritize the use of Title 42 for individuals who can be flown back to their countries of origin by ensuring that flights to those countries, including El Salvador, Guatemala, and Honduras, are full. DHS is focusing its increased use of expedited removal on single adults from these countries who would otherwise be expelled directly to Mexico under Title 42, which as noted above leads to high rates of recidivism given the lack of consequences associated with these expulsions. Additionally, single adults from these countries are less likely to have valid claims of fear or persecution or torture than most other populations, which means most are quickly removed back to their home countries after failing to establish a legal basis to remain in the United States.

18. The data demonstrates the effectiveness of this approach: 655 out of 745 (88%) single adults from Northern Triangle countries who have been processed for expedited removal in the first quarter of this fiscal year have already been removed or are in the process of being removed. Seventy-two percent (537 out of 745) of single adults from the Northern

Triangle processed for expedited removal in the first quarter of 2022 did not claim a fear and were subject to removal directly from CBP custody; another 16% (118 people) claimed fear of torture or prosecution, were detained by ICE as they went through the credible fear interview process, and were found not to have a credible fear and subject to removal. Just 90 out of 745 (12%) were referred for full removal proceedings under Section 1229a of Title 8 of the U.S. Code.

19. The 12% of single adults found to have credible fear and thus placed into full removal proceedings is a substantially smaller number of individuals than the number who would seek to unlawfully enter the United States had they been expelled under Title 42—many of whom may ultimately evade detection and succeed in entering unlawfully—given the high recidivism rates DHS is experiencing among those expelled pursuant to Title 42.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on this 22 day of April, 2022.

_____
Blas Nuñez-Neto
Acting Assistant Secretary for Border and Immigration Policy
Department of Homeland Security