# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF ARIZONA, By and through its Attorney General, Mark Brnovich, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTERS FOR DISEASE CONTROL & PREVENTION; et al., <br><br> Defendants. | Civil Action No. 6:22-cv-00885-RRS-CBW |

## PLAINTIFF STATES' OPPOSITION
## TO PROPOSED INTERVENORS' MOTION FOR LIMITED INTERVENTION

Proposed Intervenors—two aliens in Mexico, Kevin De Leon and Alicia Raymundo, and an organization that helps aliens through the asylum process, Innovation Law Lab—seek to intervene for the limited purpose of arguing that the Plaintiff States are not entitled to nationwide relief. The problem: The Proposed Intervenors' argument is squarely foreclosed by binding Fifth Circuit precedent. As the Fifth Circuit has held multiple times, and as district courts in the circuit have acknowledged, where, as here, the suit is a challenge to immigration policies, the requirement that immigration policy be uniform and the need to ensure effective relief justify—indeed, call for—nationwide relief. Thus, Proposed Intervenors' arguments fail, and their request for intervention should be denied as futile.

Furthermore, Mr. De Leon and Ms. Raymundo are not entitled to intervene because the only interest they cite to justify intervention is the right to seek asylum at the California-Mexico border. But that is not a legally protected interest. Thus, it cannot justify permitting their intervention. Further, Innovation Law Lab is an improper candidate for intervention to *oppose* a nationwide injunction in an immigration-related case, because it previously sought and successfully *obtained* a nationwide injunction in an immigration-related case. No proposed intervenor is a proper candidate for intervention.

## ARGUMENT

### I. NATIONWIDE RELIEF IS APPROPRIATE AND REQUIRED BY PRECEDENT

The Proposed Intervenors spend much time in arguing the merits of the *raison d'être* of their intervention: that "any injunctive relief should run only in the Plaintiff States." ECF 57-2 at 25. Their argument overlooks the critical point that "Fifth Circuit precedent dictates that, in immigration related cases, proper relief includes nationwide injunctions." *Texas v. Biden*, 554 F. Supp. 3d 818, 857 (N.D. Tex. 2021). Thus, the Proposed Intervenors' discussion of "splits in lower courts and across regions,"

1

ECF 57-2, at 23, is irrelevant. "[T]he Fifth Circuit's precedent in this area is applicable and controlling." *Texas v. United States*, 524 F. Supp. 3d 598, 667 (S.D. Tex. 2021).

And those cases require nationwide relief based on a rationale that is simple and compelling. Contrary to Proposed Intervenors' argument, *see* ECF 57-2, at 23–25, nationwide relief is necessary to ensure uniformity and complete relief, *see* ECF 13-1, at 41. An injunction limited to just the Plaintiff States "would detract from the integrated scheme of regulation created by Congress, and there is a substantial likelihood that a geographically-limited injunction would be ineffective because [immigrants] would be free to move among states." *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) (quotations, footnotes, and alterations omitted). That is, "[a] geographically limited injunction would be improper because federal *immigration* law must be uniform" and because such an injunction "would likely 'be ineffective because aliens would be free to move among states.'" *Texas v. Biden*, 554 F. Supp. 3d at 857 (quoting *Texas v. United States*, 809 F.3d at 188).

This case is the paradigmatic example of both those concerns. There are twenty-four Plaintiff States—almost half the union, including Arizona and Texas, which encompass most of the southern border—and so partial relief would certainly result in a patchwork immigration system. Moreover, it would be a patchwork system that makes no sense and undermines any relief. Arizona, for example, is sandwiched between two states—California and New Mexico—that are not parties to this litigation, and Texas has a substantial border with non-party New Mexico. Failing to control the border in those States will have predictable spillover effects on Arizona and Texas. These spillover effects will directly affect all other States as well. Indeed, the States' declarations on standing and irreparable harm attest to the mobility of aliens once they enter the United States, and the direct spillover effects of such immigration on States (such as Louisiana and Missouri) that do not directly border Mexico. *See, e.g.,* ECF 11-5, at 3 (Romero Decl. ¶ 4) (describing illegal immigrants trafficking drugs through Louisiana); *id.* ¶ 5 (predicting that Title 42 termination will cause an "increase in the number of migrants who

attempt to illegally cross the border into the United States and, in turn, into Louisiana"); ECF 11-6, at 5 (Green Decl. ¶ 10) ("Statistically, for every 1,000 aliens who remain unlawfully in the United States, 56 end up residing in Missouri."); *id.* at 4-5 (describing healthcare, education, and drivers' license costs imposed by illegal immigrants moving to Missouri).

Further, the States' evidence establishes the mobility of illegal immigrants who are victims of human trafficking across the southern border—a scourge which is particularly harmful to the victims themselves, and imposes long-term financial burdens on the States that provide lifelong social services to the deeply wounded victims. The Phillips Declaration spells out this nationwide mobility and these spillover effects in detail. *See, e.g.,* ECF 11-7, at 5-6, ¶ 12 ("Many of these women [trafficked across the southern border] are under the control of Asian organized crime groups and are being sex trafficked in illicit massage parlors across the United States."); *id.* at 6, ¶ 13 ("Foreign national victims of human trafficking are found in both labor and sex trafficking across the United States."); *id.* ¶ 15 ("Unskilled labor pools are common places to find labor trafficking victims in states all across the U.S."); *id.* at 6-7, ¶ 15 (describing labor-trafficking victims trafficked across the southern border to Ohio, Michigan, Florida, and North Carolina); *id.* at 7, ¶ 16 (describing commercial sex trafficking of minor immigrants in "residential brothels and camps that extend from San Diego all the way up to Canada where undocumented immigrant young girls and women are sold for sex," including "grotesque and unimaginable" abuse, such as an incident where "the physician counted 35 men raping a girl for money during a single hour"); *id.* ¶ 16 (providing a map that identifies human-trafficking spillover effects in every State in the United States); *id.* at 8-13, ¶¶ 19-36 (providing detailed examples of spillover effects of cross-border human trafficking of victims into Missouri, in particular).

As the Phillips Declaration summarizes: "Immigration policies as they relate to the management of the southern border of the United States are a contributing factor to overall rates of human trafficking in the United States. … [C]ross border human trafficking activity has implications

3

for the overall prevalence of human trafficking in all fifty states, not just the states along the U.S.-Mexico border." *Id.* at 8, ¶ 18. "[A] significant increase in the levels of illegal immigration across the southern border, as is expected from the termination of the Title 42 policy, will lead to an increase in human trafficking across the southern border, which will injure the trafficking victims and impose financial costs on States, including Missouri" and other non-border States. *Id.* at 13, ¶ 37.

Thus, the mobility of illegal aliens once they enter the United States is abundantly supported both by the States' specific evidence and by common sense. That fact plainly justifies nationwide relief here—both as an equitable matter and under the APA. *See Texas v. United States*, 524 F. Supp. 3d at 667 ("As an initial matter, the foregoing analysis demonstrates that a nationwide injunction in this APA case is warranted."). Indeed, as one of the Proposed Intervenors, Innovation Law Labs, has successfully argued, "[B]ecause Plaintiffs are likely to prevail on an APA challenge, *relief is necessarily programmatic.* 'In this context, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."'" Appellees' Answering Br., at 56, *Innovation Law Lab v. Wolf*, 951 F.3d 1073 (9th Cir. 2020) (No. 19-15716) (emphasis added) (quoting *Regents of Univ. of Cal. v. DHS*, 908 F.3d 476, 511 (9th Cir. 2018) (quoting another source)), *rev'd in part, vacated in part*, 140 S. Ct. 1891 (2021)). Thus, as the Ninth Circuit said in that same case, agreeing with Innovation Law Lab, "[t]here is a presumption (often unstated) in APA cases that the offending agency action should be set aside in its entirety rather than only in limited geographical areas." *Wolf*, 951 F.3d at 1094, *vacated as moot*, *Mayorkas v. Innovation Law Lab*, 141 S. Ct. 2842 (2021).[1]

---

[1] Proposed Intervenors argue that "organizations or associations with members living throughout the country" are different and "can serve as an analog to Rule 23's representativeness requirement." *See* ECF 57-2, at 18 n.2. This underdeveloped thesis—which does not appear to be supported by the cited cases, since neither case cites Rule 23—does not justify ignoring Fifth Circuit precedent and traditional APA remedies.

4

Underscoring that fact is the federal government's non-opposition to such relief here. "Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders." *Arizona v. United States*, 567 U.S. 387, 401–02 (2012). So the federal government's failure to oppose nationwide relief here should be taken as its view that any relief this Court issues not be piecemeal.

The Proposed Intervenors' argument does not really contend that the Plaintiff States are wrong as a matter of law. Instead, Proposed Intervenors appear to claim that the Plaintiff States failed to provide specific enough evidence showing that failing to secure the border will harm them by increasing costs for law enforcement and social services, "much less how they will result from migrants who first enter California or New Mexico as a result of the Termination Order and only later enter Plaintiff states." *See* ECF 57-2, at 19–22.[2] This argument ignores the detailed evidence of predictable harms to both border and non-border States, discussed above. In any event, the Proposed Intervenors do not—and cannot—dispute that the Termination Order *will* cause an increased illegal immigration to the United States, as the Plaintiff States pointed out. *See* ECF 13-1, at 11–12. Thus, their argument again fails to grapple with binding Fifth Circuit precedent, which holds that where, as here, there is a lawsuit involving "large-scale policy that's amendable to challenge using large-scale statistics and figures, rather than highly specific individualized documents," the "big-picture evidence" the States provide is more than sufficient. *Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021). Proposed Intervenors' argument is also at variance with the logic that illegal migrants in one part of the country are "free to move among the states," *Texas v. United States*, 809 F.3d at 188, and so an increase in the flow of illegal immigration across one State's border will have spillover effects in other States. *See also*

---

[2] To the extent the Proposed Intervenors attempt to challenge the Plaintiffs' States standing, *see* ECF 57-2, at 20–21, that goes beyond the scope of their putative intervention and the Court should ignore those arguments. In any event, the States have standing for all of the reasons explained in their preliminary injunction briefs.

*Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) (permitting a showing of traceability based "on the predictable effect of Government action on the decisions of third parties").

Finally, Proposed Intervenors appeal to the interests of other States in "expanding their tax bases and labor forces by welcoming paroled noncitizens, or their interest in vindicating their residents' desire to be reunited with noncitizen family members who would otherwise be subject to Title 42." ECF 52-7, at 22–23. Setting aside the fact that this argument essentially justifies an odious policy that incentives human trafficking in the name of increased economic output, *see* ECF 13-1, at 15–17, the Proposed Intervenors fail to show why *they* should be allowed to intervene to protect the interest of non-party *States*, such as the California and New Mexico. Proposed Intervenors plainly lack third-party standing to assert the rights of sovereign States who are not parties, given that there is no "close relationship" between Proposed Intervenors and those States, and there is no "hindrance" to those States' "ability to protect [their] own interests" (if any existed here). *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Given that the Proposed Intervenors spend much time arguing about the impropriety of that position, *see* ECF 52-7, at 17–18, the Court should give this argument no credence.

## II. INTERVENTION IS IMPROPER

Circuit precedent forecloses the Proposed Intervenors' sole purpose for intervention here—disputing the proposed scope of the injunction—and that alone justifies denying their motion. To put it simply, the Proposed Intervenors add nothing to this case; they instead raise arguments that run headlong into Fifth Circuit precedent without acknowledging that fact, and that the party with authority to raise (the United States) has forfeited. Thus, intervention would "hurt" the Plaintiff States by requiring responses to arguments foreclosed by precedent, and no "greater justice could be attained" by allowing the intervention because the Proposed Intervenors' arguments are non-starters. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Denial is therefore proper. *See id.*

**III.     EACH INDIVIDUAL PROPOSED INTERVENOR IS NOT ENTITLED TO INTERVENE.**

Finally, no proposed intervenor is proper for independently sufficient reasons that apply to each individual.  As noted above, Innovation Law Lab has successfully advocated in another case for a position that is directly contrary to the position it seeks to advance here, and thus it is uniquely unsuited to intervene for that limited purpose here.  "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position…." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Furthermore, Mr. De Leon and Ms. Raymundo are not entitled to intervene in this case because they lack a legally cognizable interest.  *First*, Mr. De Leon and Ms. Raymundo lack a protectable interest in the outcome of this litigation that would permit them to intervene as of right.  "[A]n interest that is concrete, personalized, and legally protectable is sufficient to support intervention." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015).  Proposed Intervenors have no such interests.  They say, for Mr. De Leon and Ms. Raymundo and their children, their intent "to seek asylum at the California-Mexico border" provides that interest.  ECF 57-2, at 9.  But the Proposed Intervenors never point to *any* authority that says they have an interest that "the law deems worthy of protection," *Texas v. United States*, 805 F.3d at 659, in seeking asylum in the United States generally, much less at a particular location on the border, *see Ghetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020) ("Asylum is available to a 'refugee' at the discretion of the government.") (quoting 8 U.S.C. § 1158(b)(1)).

Nor can they.  "[A]n alien in [intervenors'] position has only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020).  Proposed Intervenors do not provide, and the Plaintiff States are not aware, of any right to apply for asylum at a particular point on the border.  *See* 8 U.S.C. § 1158(a) (detailing who may apply for asylum).  Thus,

7

this case lacks what was present in the cases Proposed Intervenors cite, *see* ECF 57-2—*i.e.*, an "interest alleged [that] is 'legally protectable.'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc)).

*Second*, for those same reasons, Mr. De Leon and Ms. Raymundo lack an interest that would be impaired by any ruling in this case.

*Third*, because Mr. De Leon and Ms. Raymundo have no right to apply for asylum at any particular location along the border, they lack the necessary interest for permissive intervention. And, in any event, *see Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (looking to the interest the putative intervenor has in the action), this Court should exercise its discretion in denying them permissive intervention. *See* FED. R. CIV. P. 24(b)(1).

## CONCLUSION

The States respectfully request that the Court deny the motion for limited intervention.

Dated: May 12, 2022

Respectfully submitted,

By:*/s/ Joseph S. St. John*

MARK BRNOVICH
  Attorney General
BRUNN ("BEAU") W. ROYSDEN III*
  Solicitor General
DREW C. ENSIGN*
  Deputy Solicitor General
JAMES K. ROGERS*
  Senior Litigation Counsel
ANTHONY R. NAPOLITANO
  Assistant Attorney General
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, AZ 85004
beau.roysden@azag.gov
drew.ensign@azag.gov
james.rogers@azag.gov

ELIZABETH B. MURRILL (La #20685)
  Solicitor General
J. SCOTT ST. JOHN (La #36682)
  Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

8

*Counsel for Plaintiff State of Arizona*

STEVE MARSHALL
   Alabama Attorney General
EDMUND G. LACOUR JR.*
   Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Plaintiff State of Alabama*

LESLIE RUTLEDGE
   Arkansas Attorney General
NICHOLAS J. BRONNI*
   Solicitor General
DYLAN L. JACOBS*
   Deputy Solicitor General
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

CHRISTOPHER M. CARR
   Attorney General of Georgia
STEPHEN J. PETRANY*
   Solicitor General
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

ERIC S. SCHMITT
   Attorney General
D. JOHN SAUER
   Solicitor General
MICHAEL E. TALENT
   Deputy Solicitor General
OFFICE OF THE MISSOURI
ATTORNEY GENERAL
Supreme Court Building
P.O. Box 899
Jefferson City, MO 65102
Phone: (573) 751-3321
John.Sauer@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

TREG R. TAYLOR
   Attorney General of Alaska
CORI M. MILLS*
   Deputy Attorney General of Alaska
CHRISTOPHER A. ROBISON*
   Assistant Attorney General
Alaska Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501-1994
chris.robison@alaska.gov

*Counsel for Plaintiff State of Alaska*

ASHLEY MOODY
   Attorney General
JAMES H. PERCIVAL*
   Deputy Attorney General of Legal Policy
OFFICE OF THE FLORIDA
ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

DEREK SCHMIDT
   Attorney General
DWIGHT R. CARSWELL*
   Deputy Solicitor General
Office of the Kansas Attorney General
120 SW 10th Ave., 3rd Floor
Topeka, KS 66612-1597
dwight.carswell@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AUSTIN KNUDSEN
   Attorney General
DAVID M.S. DEWHIRST*
   Solicitor General
MONTANA DEPARTMENT OF JUSTICE
215 N Sanders St
Helena, MT 59601
P. (406) 444-2026
David.Dewhirst@mt.gov

*Counsel for Plaintiff State of Montana*

DOUGLAS J. PETERSON
   Attorney General
JAMES A. CAMPBELL*
   Solicitor General
OFFICE OF THE NEBRASKA ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
jim.campbell@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

JOHN M. O'CONNOR
   Attorney General of Oklahoma
BRYAN CLEVELAND*
   Deputy Solicitor General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921

LAWRENCE G. WASDEN
   Attorney General,
BRIAN KANE*
   Chief Deputy Attorney General
Office of the Idaho Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 334-2400
Email: Brian.Kane@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

DANIEL CAMERON
   Attorney General of Kentucky
MARC MANLEY*
   Associate Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for Plaintiff Commonwealth of Kentucky*

LYNN FITCH
   Attorney General of Mississippi
JUSTIN L. MATHENY*
   Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

DAVE YOST
   Ohio Attorney General
BENJAMIN M. FLOWERS*
   Solicitor General
Office of the Ohio Attorney General
30 E. Broad St., 17th Fl.
Columbus, OH 43215
benjamin.flowers@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Oklahoma*

HERBERT H. SLATERY III
   Attorney General and Reporter of Tennessee
ANDRÉE S. BLUMSTEIN
   Solicitor General
CLARK L. HILDABRAND*
BRANDON J. SMITH*
   Assistant Solicitors General
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
(615) 253-5642
Clark.Hildabrand@ag.tn.gov
Brandon.Smith@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

PATRICK MORRISEY
   Attorney General
LINDSAY SEE*
   Solicitor General
Office of the West Virginia Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov

*Counsel for Plaintiff State of West Virginia*

* Pro hac vice application forthcoming

*Counsel for Plaintiff State of Ohio*

ALAN WILSON
   South Carolina Attorney General
THOMAS T. HYDRICK*
   Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

SEAN D. REYES
   Utah Attorney General
MELISSA HOLYOAK*
   Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for Plaintiff State of Utah*

BRIDGET HILL
   Attorney General of Wyoming
RYAN SCHELHAAS*
   Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*