**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| STATE OF ARIZONA*, et al.*, | |
| *Plaintiffs*, | Civil Action No.: 6:22-cv-00885-RRS-CBW |
| v. | |
| CENTERS FOR DISEASE CONTROL & PREVENTION, *et al.,* | Judge: Robert R. Summerhays<br>Magistrate Judge: Carol B. Whitehurst |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF PROPOSED INTERVENOR'S EXPEDITED MOTION TO STAY NATIONWIDE SCOPE OF PRELIMINARY INJUNCTION PENDING APPEAL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      Law Lab has standing to appeal the merits of the order granting Plaintiff States' motion for a preliminary injunction on a nationwide basis. ..................................................................... 2

II.     This Court should stay the preliminary injunction pending appeal, insofar as it operates outside the geographic bounds of the plaintiff states. ..................................................................... 3

    A.     Law Lab is likely to succeed on the merits of its claim on appeal. .................................. 4

        1.     Law Lab is likely to succeed on its appeal of the denial of intervention. .................... 4

        2.     Law Lab is likely to succeed on its claim that the Court should have limited the scope of its injunction to the Plaintiff States. .................................................................... 5

    B.     Law Lab will suffer irreparable harm absent a stay. ...................................................... 13

    C.     A stay of the nationwide scope of the preliminary injunction will not cause Plaintiff States substantial injury and the public interest warrants a stay. ........................................... 14

CONCLUSION ................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**

*Arizona v. Biden*, 31 F.4th 469 (6th Cir. 2022).............................................................. 3

*Austin Indep. Sch. Dist. v. United States*, 429 U.S. 990 (1976)..................................... 4

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ................................................................. 3

*California v. Texas*, 141 S. Ct. 2104 (2021) ................................................................. 5

*Damus v. Nielsen*, 313 F. Supp. 3d 317, 323 (D.D.C. 2018)....................................... 10

*Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406 (1977)............................................. 4, 6

*DeOtte v. State*, 20 F.4th 1055 (5th Cir. 2021) ........................................................... 2, 7

*Doe v. Mayorkas*, 854 F. App'x 115 (9th Cir. 2021)..................................................... 10

*Doe v. Wolf*, 432 F. Supp. 3d 1200 (S.D. Cal. 2020)................................................... 10

*Lewis v. Casey*, 518 U.S. 343 (1996)......................................................................... 4, 6

*Miller v. French*, 530 U.S. 327 (2000) ........................................................................ 11

*Milliken v. Bradley*, 418 U.S. 717 (1974)................................................................... 4

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)...................................... 10

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................ 1, 11, 13, 14

*Texas v. Biden*, 20 F.4th 928, 995-96 (5th Cir. 2021)................................................. 7

*Texas v. Biden*, 554 F. Supp. 3d 818 (N.D. Tex. 2021).............................................. 9

*Texas v. United States*, 14 F.4th 332, 341 (5th Cir. 2021).......................................... 4

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015)................................................. 9

*Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080 (2017)................ 4

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008)................... 11

**Statutes**

42 U.S.C. 265.............................................................................................................. 8

42 U.S.C. 268.............................................................................................................. 8

5 U.S.C. 706(a)(2)....................................................................................................... 10

8 U.S.C. 1225(b) ......................................................................................................... 7

Cal. Educ. Code § 68130.5 ......................................................................................... 7

**Other Authorities**

Kate Morrissey, *Ukrainians only: Racial disparities in U.S. border policies grow more obvious*, San Diego Union Tribune (Mar. 19, 2022),

https://www.sandiegouniontribune.com/news/immigration/story/2022-03-19/ukrainians-border-title-42. ................................................................................................................ 8

Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291 (2003)......................................................................... 11

**Rules**

Fed. R. App. P. 8(a) ..................................................................................................................... 3

**Regulations**

85 Fed. Reg. 65,806 (Oct. 16, 2020)............................................................................................. 8

**INTRODUCTION**

Proposed Intervenor Innovation Law Lab ("Law Lab") respectfully requests that this Court stay the portion of its Preliminary Injunction that applies the ruling nationwide, rather than only in the Plaintiff States. *See* ECF No. 90 at 46-47. Should the Court deny this request, Proposed Intervenor intends to seek the same relief from the Fifth Circuit. *See* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court[.]").

Proposed Intervenor maintains that this Court erred in denying intervention, and also in ordering the continued implementation of Title 42 across the entire southern border, including in states that are not parties to this case and have claimed no injury for remediation. ECF No. 90 at 46-47. Law Lab has now appealed this Court's denial of its Motion for Limited Intervention, ECF Nos. 62, 83, as well as the nationwide scope of the preliminary injunction—specifically, its application in the geographic boundaries of states that are not parties to this lawsuit ECF Nos. 90, 91.

Law Lab respectfully contends that it is likely to succeed on the merits of its claims that this Court erred in denying its motion to intervene and in issuing a preliminary injunction that is nationwide in scope. Law Lab maintains that nationwide injunctions are impermissible in cases like this one, where that relief far exceeds what is needed to remedy the traceable harm to the moving parties and greatly burdens the rights and interests of non-parties. Additionally, Law Lab will suffer irreparable harm in the absence of a stay, a stay will not cause Plaintiff States substantial harm, and the public interest warrants a stay of the nationwide scope of the injunction pending appeal.

For these reasons, this Court should stay the nationwide scope of the preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (listing stay factors).

1

## ARGUMENT

**I.      Law Lab has standing to appeal the merits of the order granting Plaintiff States' motion for a preliminary injunction on a nationwide basis.**

Law Lab[1] seeks a stay of the nationwide scope of the preliminary injunction pending its appeal of both its denied Motion for Limited Intervention, ECF No. 83, and the nationwide scope of the injunction, ECF Nos. 90, 91. As a denied Proposed Intervenor, Law Lab may appeal the nationwide scope of the preliminary injunction together with its appeal of the denied Motion for Limited Intervention. *DeOtte v. State*, 20 F.4th 1055, 1066-67 (5th Cir. 2021) (holding denied intervenors may appeal intervention and merits simultaneously because "if it were concluded on appeal that the district court had erred in denying the intervention motion . . . then the applicant would have standing to appeal the district court's judgment.").

Law Lab has suffered (and will continue to suffer) harm from the geographic scope of the injunction this Court ordered. *DeOtte*, 20 F.4th at 1070 ("Standing to appeal requires injury from the judgment of the lower court," and requires appellant to show injury in fact, causal connection, and redressability). The nationwide scope of the preliminary injunction stymies Law Lab's operations by blocking access to the asylum system for individuals who intend to seek asylum along the southern border in California and New Mexico and have no intent to reside in any of the Plaintiff States. Declaration of Stephen Manning, ECF No. 62-3 ("Law Lab Decl.") at ¶¶ 10, 12, 13. But for the nationwide scope of the preliminary injunction, Law Lab would have been permitted to resume its provision of services to individuals seeking asylum at the California and New Mexico border on May 23, 2022. ECF No. 10-1. An order limiting the nationwide scope of this injunction and instead allowing it to run only in the geographic boundaries of the Plaintiff

---

[1] Both individual Proposed Intervenors, Alicia De Los Angeles Duran Raymundo and Kevin Alexi De Leon De Leon, have been admitted to the United States and no longer pursue intervention in this case.

2

States would permit Law Lab to resume its provision of services to individuals seeking asylum in California and New Mexico.

Thus, Law Lab can establish injury in fact, causal connection, and redressability in support of its standing to appeal the geographic scope of the preliminary injunction. For the same reasons, Proposed Intervenor continues to believe this Court erred in denying its Motion for Limited Intervention. ECF No. 62 at 15-16 (describing Law Lab's unique interests for purposes of Rule 24).

**II.     This Court should stay the preliminary injunction pending appeal, insofar as it operates outside the geographic bounds of the plaintiff states.**

A party may move to stay an order granting an injunction pending appeal. Fed. R. App. P. 8(a)(1)(C). "A party must ordinarily move first in the district court[.]" Fed. R. App. P. 8(a)(1). The party seeking a stay of injunctive relief in district court must show (1) that it is likely to succeed on appeal; (2) that the movant would suffer irreparable harm absent a stay; that granting the stay would not substantially harm other parties; and (4) that granting the stay would serve the public interest. *See Staley v. Harris Cnty., Texas*, 332 F. Supp. 2d 1041, 1043 (S.D. Tex. 2004); *Nat'l Football League Players Ass'n on behalf of Elliott v. Nat'l Football League*, No. 4:17-CV-00615, 2017 WL 4124105, at *2 (E.D. Tex. Sept. 18, 2017).

This Court should grant Law Lab's motion to stay the scope of the preliminary injunction that extends beyond the geographic boundaries of the Plaintiff States because Law Lab is likely to succeed on the merits of its appeal of the denial of its intervention motion and the nationwide scope of the injunction; Law Lab will continue to suffer irreparable harm absent a stay; a stay will not substantially harm Plaintiff States; and the public interest supports a stay. *See Nken*, 556 U.S. at 425-26.

### A.   Law Lab is likely to succeed on the merits of its claim on appeal.

Law Lab can establish "a strong showing of likelihood of success on the merits" of its

claim that the preliminary injunction this Court granted should have been tailored to apply only in

the geographic boundaries of the Plaintiff States, as required by the first stay factor. *See Woodfox*

*v. Cain*, 789 F.3d 565, 569 (5th Cir. 2015).

### 1.       Law Lab is likely to succeed on its appeal of the denial of intervention.

As an initial matter, Proposed Intervenor is likely to succeed on its appeal of the denial of

its motion for limited intervention as of right and limited permissive intervention, ECF No. 83.

Law Lab demonstrated that it is entitled to intervene as of right by showing (1) that its application

to intervene was timely; (2) that it has an interest related to the policy that is the subject of the

action; (3) that the disposition of the action my "as a practical matter, impair or impede [its] ability

to protect that interest"; and (4) that its interest is inadequately represented by existing parties to

the suit. *See* Fed. R. Civ. P. 24(a); ECF No. 62 at 7-14. The Court denied Law Lab's motion to

intervene on the ground that its interests are adequately represented by the federal government

Defendants.

However, as Proposed Intervenor's opening brief showed, there is sufficient divergence

between its interests and those of the government to warrant intervention under Fifth Circuit law.

To overcome the presumption of adequate representation, "an intervenor must demonstrate that its

interests diverge from the putative representative's interests in a manner germane to the case."

*Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015). As the Fifth Circuit held in *Texas*, even

when the government defends a policy benefiting proposed intervenors, the government's interest

may still differ due to its overriding interest in "expansive . . . executive authority" and "efficiently

enforcing the immigration laws." *Id.* at 663. In contrast, in this case, Proposed Intervenor has

demonstrated its divergent interest in seeking to advance migrant and refugee justice, including by

assisting individuals seeking asylum under Title 8 near the California and New Mexico borders with Mexico. Law Lab Decl. ¶¶ 2, 10, 12-13. The government has made its divergent interests manifest in this litigation by declining to present arguments for limiting the scope of the preliminary injunction to the Plaintiff States. *See Texas*, 805 F.3d at 663 (divergent government interest impacting litigation weighed in favor of intervention).

In light of this divergence of interests, it is no answer that Proposed Intervenor merely seeks to pursue a litigation strategy that has been rejected by government defendants. The issue Proposed Intervenor seeks to raise goes to the nature of the relief available; it is not just a different litigation strategy. Moreover, where there is a "lack of unity in all objectives," it is sufficient for Proposed Intervenor to show that it plans to advance "real and legitimate additional or contrary arguments" to meet Rule 24(a)'s requirement that the government's representation "*may* be inadequate." *Texas*, 805 F.3d at 662 (cleaned up). Proposed Intervenor's interests diverge from the government's and, to advance those interests, it seeks to pursue an argument the government has not pressed. As such, Proposed Intervenor is likely to prevail on appeal of the denial of intervention.

### 2. Law Lab is likely to succeed on its claim that the Court should have limited the scope of its injunction to the Plaintiff States.

"[A] district court should think twice—and perhaps twice again—before granting universal anti-enforcement injunctions against the federal government. Even if it turns out that the . . . States in this case are entitled to relief, it is difficult to see why an injunction applicable only to them would not do the trick." *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, J.) (staying a nationwide injunction entered on behalf of several states challenging federal immigration policy). *See also Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a

particular plaintiff in a particular lawsuit. When a district court . . . goes further than that, ordering the government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies."); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425-29 (2018) (Thomas, J., concurring). Here, like in *Arizona*, a nationwide injunction is not necessary to remedy—and is entirely out of proportion with—Plaintiff States' alleged harms.

Injunctions must be tailored to take account of case-specific factors. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Such tailoring requires taking a clear-eyed look at the precise nature of the injury that gave rise to the suit and modulating relief accordingly. *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Where the injury to the prevailing party is slight, equitable relief should typically be correspondingly modest. *Milliken* v. *Bradley*, 418 U.S. 717, 738 (1974) (in "any equity case, the nature of the violation determines the scope of the remedy"); *see also Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977) (same); *Austin Indep. Sch. Dist. v. United States*, 429 U.S. 990, 992 (1976) (Powell, J., concurring) (faulting the Court of Appeals for ordering a degree of injunctive relief "far exceeding in scope any identifiable violations"). To apply this principle of proportionality, courts must weigh the harm suffered by the plaintiff against the burdens of imposing injunctive relief on the defendant and the public at large, including parties not before the court. *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Courts must also consider the viability of narrower alternatives. *See Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 2087-88 (2017) (per curiam) (narrowing injunction that swept "much further" than what would have been necessary to redress the injuries of the plaintiffs and others "similarly situated."). In *Dayton*, the Supreme Court faulted the lower court

6

because "instead of tailoring a remedy commensurate to the three specific violations, the Court of Appeals imposed a systemwide remedy going beyond their scope." 433 U.S. at 417. And, in *Lewis,* the Supreme Court struck down a sweeping injunction because the "violation ha[d] not been shown to be systemwide, and granting a remedy beyond what was necessary to provide relief to [plaintiffs] was therefore improper." 518 U.S. at 360.[2]

Law Lab respectfully contends this court erred in ordering nationwide injunctive relief that sweeps much further than necessary. The injunction is entirely out of proportion with the showing of harm in support of Plaintiff States' argument for a preliminary injunction and not justified by the alleged general need for "uniform" immigration policy or the APA's remedial scheme.

This Court found Plaintiff States had established irreparable injury in support of their request for a nationwide injunction "based on the government's own predictions[] the Termination Order will result in an increase in daily border crossings," potentially as high as "18,000." ECF No. 90 at 44. The Court then relied on "evidence supporting the Plaintiff States' position that such a rise in border crossings will increase their costs for healthcare reimbursements and education services" that are not recoverable. *Id.* But the underlying evidence upon which the Court relied does not describe any injury traceable to the Termination Order taking effect in non-plaintiff states in a manner that justifies the nationwide scope of the preliminary injunction.

The projection that the Termination Order could lead to an increase to up to "18,000 border crossings per day," ECF No. 90 at 44, stemmed from an article stating "the Department of

---

[2] *See also New York v. DHS*, 969 F.3d 42, 87-88 (2d Cir. 2020) (limiting geographic scope of injunction against Trump Administration's public charge rule to three plaintiff states); *Innovation Law Lab v. Wolf*, 951 F.3d 986, 990 (9th Cir. 2020) (limiting geographic scope of injunction against Trump Administration's Migrant Protection Protocols to Ninth Circuit); *Texas v. United States*, 14 F.4th 332, 341 (5th Cir. 2021) (partially staying injunction against Biden Administration's enforcement priorities, citing its nationwide scope), *vacated*, 24 F.4th 407 (5th Cir. 2021) (mem.), *appeal dismissed*, 2022 WL 517281 (5th Cir. Feb. 11, 2022).

Homeland Security has enlisted Federal Emergency Management Administration (FEMA) officials to help prepare for as many as 18,000 migrants per day," ECF No. 13-2 at 25. But that is a projection for purposes of emergency planning, and of course just conjecture. Moreover, the projection says nothing about how many—if any—individuals will (1) enter the non-plaintiff states of California or New Mexico as a result of the Termination Order; (2) later move to and reside in Plaintiff States; and then (3) impose economic costs on those Plaintiff States once there. No evidence in the record shows that Plaintiff States' harms are "directly traceable" to the challenged policy's operation in non-plaintiff States. *Cf. California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (holding that plaintiff states failed to establish standing where they "failed to show how this injury is directly traceable to any actual or possible unlawful Government conduct[.]").

This Court notes that the record includes evidence that the projected increase in border crossings will increase healthcare and education costs. But Plaintiff States' evidence of alleged increased healthcare costs is based on examples that are not traceable to the implementation of the Termination Order in non-plaintiff states. Plaintiff States' assertion that "Yuma Regional Medical Center ("YRMC") in Arizona was forced to provide $546,050 in unreimbursed medical care for unauthorized [immigrants]," ECF No. 13-1 at 21, refers to costs associated with providing services to individuals "while in ICE custody," ECF No. 13-2 at 4, not individuals who could enter through non-plaintiff States as a result of the termination of the Title 42 order. Similarly, evidence of increased healthcare costs to the state of Missouri refer to costs associated with the treatment of "ineligible [immigrants]" generally. ECF No. 13-5 at 5. It says nothing about the conjectural group of people who would have been expelled pursuant to Title 42 but for the Termination Order, would enter the United States through California or New Mexico, and later would move to Plaintiff States and increase those states' healthcare costs once there. Plaintiff States' evidence of education costs

8

is similarly untraceable to the Termination Order's operation in non-plaintiff states. *See id.* at 4;

ECF No. 13-1 at 21.

Thus, even if the evidence on which this Court relied suffices to warrant a preliminary

injunction in *Plaintiff* States (a view that Law Lab does not share), it does not warrant extending

that injunction to prevent the defendants from implementing the Termination Order in states that

are not parties to this case under basic equitable principles of remedial proportionality. *See Dayton*,

433 U.S. at 420; *Lewis*, 518 U.S. at 361.

This Court also erred in failing to consider the severe harm that nationwide relief imposes

on thousands of individual non-parties who will never impose any burden on the Plaintiff States.

*See Weinberger*, 456 U.S. at 312 (equity requires balancing non-party interests). The Title 42 order

that the preliminary injunction keeps in place bars access to asylum for people who have *no*

*intention of leaving California* prior to their cases being resolved, much less travelling to Plaintiff

States. *See* ECF No. 62-2 ¶ 20 (Declaration of Alicia De Los Angeles Duran Raymundo); ECF

No. 62-1 ¶ 15 (Declaration of Kevin Alexi De Leon De Leon). Nationwide relief bars those

individuals from accessing the asylum system, even though they will never do anything that harms

the Plaintiff States.

Moreover, ordering nationwide relief for Plaintiff States without considering the

countervailing interests of other states has effectively permitted fewer than half of the states in the

Nation to set nationwide immigration policy at the expense of those that did not participate in these

proceedings. Plaintiff States' economic interests are no more compelling than other states'

countervailing interests in, for example, expanding their tax bases and labor forces by welcoming

paroled noncitizens, or their interest in vindicating their residents' desire to be reunited with

noncitizen family members who would otherwise be subject to Title 42. *See* Brief of Illinois, *et*

9

*al*., as *Amici Curiae*, *Biden v. Texas*, No. 21-954 (U.S. filed Mar. 21, 2022), 2022 WL 876862 (noting the "wide range of benefits" to states arising from the federal government's decision to parole asylum seekers into the country, including "access to safe living conditions to family reunification."). To give just one example, Plaintiff States' stated economic interests in not expending costs associated with "educat[ing] [undocumented] children," ECF No. 13-1 at 21, runs directly counter to California's interest, which is to do just the opposite by funding extended educational opportunities for undocumented students in its state. *See* Cal. Educ. Code § 68130.5 (state law allowing qualifying undocumented students to pay in-state tuition at state community colleges and universities). The nationwide injunction improperly privileges the Plaintiff States' interests, while disregarding core structural principles of interstate equality.

This Court's reasoning was erroneous for at least two other reasons. First, the Court pointed to the need to "promot[e] uniformity in immigration enforcement," ECF No. 90 at 47, but that consideration does not justify the nationwide scope of the injunction it entered. The Title 42 order (and the Termination Order as well) derives from the Public Health Services Act's, 42 U.S.C. 265, 268, authority to suspend the introduction of certain individuals due the "danger of the introduction of COVID-19 into the United States." 85 Fed. Reg. 65,806 (Oct. 16, 2020). The Title 42 order is therefore a public health measure, not an immigration law or policy. COVID-19 public health measures have varied from state to state and region to region. Accordingly, the Court's reliance on the need for "uniformity in immigration enforcement" is incorrect.

Second, the Court's reliance on the Fifth Circuit's holding in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), overlooks the key differences between that case and this one. *Texas* relied upon the need for uniformity in the implementation of the deferred action program at issue, which was characterized by standardized eligibility criteria and would have conferred uniform federal

10

benefits upon successful applicants across the country. *Id.* at 147-49. In contrast, Title 42, like

other border policies, has been characterized by dis-uniform implementation since its inception.

As the record evidence reflects, Title 42 applies differently at some ports of entry than others, and

to some nationalities and not others.[3] The alleged need for uniformity is plainly insufficient to

justify nationwide relief with respect to a policy that is already implemented differently across the

border and over time. Additionally, regardless of whether the record in *Texas* included evidence

that immigrants move from one state to another, it is the burden of the Plaintiff States to prove that

will happen in *this* case, which they have failed to do. The Court's assertion that a tailored

preliminary injunction "will likely do nothing more than shift border crossings from the Plaintiff

States to states not covered by the preliminary injunction," ECF No. 90 at 47, is wholly

unsupported by the record in this case. At a minimum, the Court should have entered its order in

only the Plaintiff States until such time as those States could show that the predicted shift in border

crossings had actually come to pass in at least some number of cases.

Even in cases actually involving immigration policies, rather than public health policies

with immigration-related effects, the need for uniformity is but one valid factor among many that

courts should consider in fashioning tailored injunctive relief. Any argument that Fifth Circuit

caselaw *requires* nationwide relief is without merit. ECF No. 74 at 2. Courts in this circuit have

stated that proper relief in immigration related cases "*includes* nationwide injunctions," *Texas v.*

*Biden*, 554 F. Supp. 3d 818, 857 (N.D. Tex. 2021) (emphasis added), and that "[i]t is not beyond

---

[3] *See, e.g.,* ECF No. 65 at 5-6 (listing only six ports of entry at which different numbers of individuals have been excepted from Title 42 pursuant to the NGO-supported humanitarian exception process); *see also* Kate Morrissey, *Ukrainians only: Racial disparities in U.S. border policies grow more obvious*, San Diego Union Tribune (Mar. 19, 2022), https://www.sandiegouniontribune.com/news/immigration/story/2022-03-19/ukrainians-border-title-42.

the power of a court *in appropriate circumstances*, to issue nationwide injunctions," *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) (emphasis added). But it hardly follows that virtually every case affecting nationwide federal immigration law requires nationwide relief, regardless of the extent of redressable injury. That is not our system. *See DHS v. New York*, 140 S. Ct. at 600 (Gorsuch, J. concurring) ("The traditional system of … courts issuing interlocutory relief limited to the parties at hand" "encourages multiple judges … and circuits to weigh in only after careful deliberation, a process that permits the airing of competing views[.]").

Moreover, the Court's note that a tailored preliminary injunction "would only further complicate DHS's operations," does not warrant the sweeping relief it issued in this case. Notably, this is not a position that DHS has advanced. *See* ECF No. 76. As Law Lab has discussed at length, splits in the lower courts and differences across regions routinely result in non-uniform immigration policies that the federal government has figured out how to implement, despite some increased complexity as a result.[4] As in those cases it remains eminently practicable here to limit the scope of the injunction to apply in only some geographic areas.[5]

---

[4] For example, in the context of the so-called Migrant Protection Protocols, a comparable border policy related to asylum, from January 2020 to July 2021, a class-wide preliminary injunction entered in the Southern District of California required CBP to provide access to counsel to people in MPP *nonrefoulement* interviews. However, that order was not binding outside California, and the government did not implement it elsewhere. *See Doe v. Wolf*, 432 F. Supp. 3d 1200 (S.D. Cal. 2020); *Doe v. Mayorkas*, 854 F. App'x 115 (9th Cir. 2021). Similarly, since 2018 a class-wide preliminary injunction entered in the District of Columbia has required arriving asylum seekers found to have a credible fear of persecution to be considered for parole under a previously issued parole directive, and has prohibited ICE from detaining them absent an individualized determination on flight risk or danger. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 323 (D.D.C. 2018). But it applies only to people in ICE custody in the jurisdiction of the Detroit, El Paso, Los Angeles, Newark, and Philadelphia field offices. *Id.* at 325.

[5] The Court rightly chose not to rely on Plaintiff States' assertion that the APA requires nationwide relief. That view is inconsistent with the actual practice in many immigration cases (among others), and contrary to governing Supreme Court precedent concerning Congress's need to speak clearly

### B.   Law Lab will suffer irreparable harm absent a stay.

Stay applicants must demonstrate they are likely to face irreparable injury absent a stay.

*Nken*, 566 U.S. at 426; *see also Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 367

(2008).

Law Lab's organizational mission is, *inter alia*, to leverage technology, advocacy, and

law in order to advance migrant and refugee justice, including by serving individuals who seek

asylum under Title 8 near the California and New Mexico borders with Mexico. Law Lab Decl.

¶¶ 2, 10. Title 42's wholesale suspension of the asylum system at the southern border has

frustrated Law Lab's mission "on multiple levels" during the period that it has been effect. *Id.* ¶¶

14-16. Title 42 has "stalled certain core aspects" of Law Lab's mission-related programming, *id.*

¶ 14, including by impeding Law Lab's ability to engage in massive collaboration representation

projects in California and New Mexico, *id.* ¶ 16. In addition, Law Lab has had to divert resources

to meet the needs of individuals on the Mexican side of the California-Mexico border who are

blocked from seeking access to asylum, including by distributing accurate information about the

options that such individuals have, *id.* ¶¶ 20-21, and it has required Law Lab to "respond to a

flood of inquiries and community uncertainty," *id.* ¶ 22. Further, the complications imposed by

the Title 42 order have also imposed significant uncertainties that undermine the ability of Law

Lab to provide effective representation and accurate information to people impacted by the Title

42 order, and "[t]he only way to eliminate the uncertainty wrought by the [Title 42] order is to

terminate the order itself." *Id.* ¶ 21.

Title 42 has substantially harmed Law Lab by frustrating Law Lab's mission, disrupting

its core functions, and requiring it to redirect significant resources. The ongoing implementation

---

when displacing courts' traditional equitable authority. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010)**;** *Miller v. French*, 530 U.S. 327, 340 (2000).

of Title 42, which at present is only a reality because of this Court's order granting Plaintiff States'

motion for a nationwide preliminary injunction, has already extended the life of those harms to

Law Lab, and will worsen them by creating yet another layer of uncertainty and opportunity for

harm to asylum-seeking individuals. *Id.* at ¶¶ 20-21. "If Title 42's termination does not take effect

due to litigation, this reversal in policy would compel Law Lab and the [California Welcoming]

Task Force to continue diverting resources to combat another prime opportunity for

misinformation and exploitation of asylum-seeking individuals on the border." *Id.* at ¶ 20. A stay

of the nationwide scope of the preliminary injunction will ameliorate the harms to Law Lab by

allowing the Termination Order to take effect in regions that are key to Law Lab's mission-driven

programming.

Thus, Law Lab faces irreparable harm absent a stay of the nationwide scope of the

preliminary injunction.

### C. A stay of the nationwide scope of the preliminary injunction will not cause Plaintiff States substantial injury and the public interest warrants a stay.

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for

assessing the harm to the opposing party and weighing the public interest." *Nken*, 556 U.S. at 435.

For the same reasons that Plaintiff States failed to show why "an injunction applicable only

to them would not do the trick," they will not suffer substantial injury if the nationwide scope of

the injunction is stayed pending Law Lab's appeal. *Arizona v. Biden*, 31 F.4th at 484. Plaintiff

States failed to prove the harms they allege in support of their motion for a nationwide preliminary

injunction were directly traceable to individuals who, but for the Termination Order, would have

been expelled under the Title 42 order but instead will enter through non-plaintiff states and later

move to and reside in Plaintiff States. *See supra* Section II(A)(2). Because staying the nationwide

scope of the preliminary injunction will still allow the injunction to take effect within the

14

boundaries of Plaintiff States, and because Plaintiff States have not shown that they will be harmed at all by individuals who seek asylum in non-plaintiff states, Plaintiff States will not be substantially injured by this stay.

Additionally, the public interest is served by an injunction that comports with the equitable authority of courts to grant relief to the parties before them. Moreover, the public interest includes the interests of non-parties, including individuals and states not participating in this litigation. It will therefore be served by a stay order that does not unduly infringe upon the rights of individuals who seek to access the asylum system in states that are not parties to this lawsuit, thereby "preventing [migrants] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436.

## CONCLUSION

For the foregoing reasons, this Court should stay the preliminary injunction it ordered on May 20, 2022, outside of the geographic boundaries of the Plaintiff States.

Respectfully submitted,                                   Dated: May 26, 2022

/s/ Monika Y. Langarica
Monika Y. Langarica*
CA Bar No. 308518
Ahilan Arulanantham*
CA Bar No. 237841
Talia Inlender*
CA Bar No. 253796
**Center for Immigration Law and Policy**
**UCLA School of Law**
Box 951476
Los Angeles, CA 90095
(310) 983-3345
langarica@law.ucla.edu

/s/ Matthew S. Vogel
Matthew S. Vogel+
LA Bar No. 35363
Sirine Shebaya*
DC Bar No. 1019748
Victoria F. Neilson*++
NY Bar No. 2689792
Joseph Meyers*+++
CA Bar No. 325183
**National Immigration Project**
**of the National Lawyers Guild (NIPNLG)**
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
(504) 264-3613
matt@nipnlg.org

* Admitted *pro hac vice*
+ Not admitted in DC; working remotely from and admitted in Louisiana only
++ Not admitted in DC; working remotely from and admitted in New York only
+++ Not admitted in DC; working remotely from and admitted in California only